J. M. CATLETT, PLAINTIFF IN ERROR, *v.* CHATTANOOGA HANDLE COMPANY, DEFENDANT IN ERROR.*

(*Knoxville,* September Term, 1932.)

Opinion filed November 26, 1932.

---

*As to loss or impairment of eyesight, see annotation in 8 A. L. R., 1326; 24 A. L. R., 1467; 67 A. L. R., 797; 73 A. L. R., 703; 28 R. C. L., 821; R. C. L. Perm. Supp., p. 6243.

On recovery for injury to eyes as affected by pre-existing disease, see annotation in 19 A. L. R., 106; 28 A. L. R., 208.

S. H. FORD, for plaintiff in error.

R. P. FRIERSON, for defendant in error.

MR. JUSTICE COOK delivered the opinion of the Court.

In childhood the petitioner lost the vision of his left eye from disease. His right eye was destroyed by an injury at defendant's plant by accident arising out of and in the course of his employment. The industrial injury plus the loss of the left eye during the employee's childhood resulted in blindness. The trial judge awarded compensation for the loss of the eye destroyed by the industrial injury. It is insisted that under the compensation law, chapter 123, Acts of 1919, the petition-

er should have been awarded compensation for permanent total disability under section 28 (d) and 28 (e) of the Act; and that the trial judge erred in applying section 28 (c), which fixes the compensation for the loss of an eye at fifty per cent of the employee's average weekly wages during one hundred weeks. Section 28 (e), relied on by petitioner, reads:

"The total and permanent loss of the sight of both eyes, or the loss of both arms at the shoulder, or complete and permanent paralysis, or total and permanent loss of mental faculties, or any other injury which totally incapacitates the employe from working at an occupation which brings him an income, shall constitute total disability."

The last phrase "total disability" relates to its antecedent phrase "any other injury," and makes the total disability to be compensated for dependent upon injury.

The Act was designed, as shown by its provisions considered altogether, to provide compensation for injury. By section 2 (d) injury is defined. The section reads:

" 'Injury' and 'personal injury' shall mean only injury by accident arising out of and in the course of employment and shall not include a disease in any form except as it shall naturally result from the injury."

█ It was not the purpose of the Tennessee Workmen's Compensation Act, as of some of the states, to measure compensation by the incapacity to work and the consequent decrease of wage earning ability, all dependent upon the opinion of witnesses and judicial ascertainment by reference to evidence. The Act defines degrees of disability resulting from injury and couples them with monetary units as the measure of compensation. For instance, section 28 (a) prescribes compensa-

tion for "temporary total disability;" 28 (b) for "temporary partial disability," and 28 (c) for "permanent partial disability." This section provides that for permanent partial disability the compensation shall be based upon the extent of disability and proceeds to schedule the allowance for the loss of fingers, toes, feet, hands, legs, arms, eyes, and of hearing. The organs of hearing only are dealt with as a unit. The specific loss fixed by the Act for the loss of one eye is 50 per cent of the average weekly wages of the employee for 100 weeks, and so on with other members of the body. The Act fixes the compensation for the loss of each member.

Dealing with the loss of an eye and a foot the Act increases the number of weeks through which compensation shall run, and so for the loss of an eye and a hand. Then by sections 28 (d) and 28 (e) the Act defines permanent total disability as the total and permanent loss of the sight of both eyes and for such loss the compensation is extended throughout a period not exceeding 550 weeks.

Causal connection between the disability and the injury is required, as may be seen by reference to section 2 (d) above quoted.

▇▇ Petitioner's permanent total disability was not the result of an injury, but the result of an injury that destroyed the vision of one eye plus the affliction during his infancy that destroyed the vision of the other eye. The statute, prescribing as it does compensation for industrial injury only and measuring it by the specific loss of a member, regardless of the effect upon capacity to work, forbids the addition of a pre-existing loss of a member by disease to a subsequent loss of a member through industrial injury for the purpose of transferring the measure of compensation from the lower to the

higher schedule. This conclusion necessarily follows from provisions of the Act scheduling compensation for the loss of particular members of the body, including the eye, without regard to the employee's loss of earning capacity.

In prescribing compensation for injury to vision the legislature did not consider the organs of sight as a unit, as of the organs of hearing. See *Diamond Coal Co.* v. *Jackson,* 156 Tenn., 182. Each eye was considered separately, and compensation related to a specific loss, the loss of one constituting permanent partial disability and the loss of both total permanent disability.

To constitute earning capacity as the test it might be said that the loss of one eye or the loss of one hand or the loss of one toe would not constitute partial permanent disability and so justify the allowance of compensation for such loss. Therefore the courts cannot, as is done in some of the states, measure the employee's compensation by degrees of incapacity. We are controlled by the schedules of the Act where and when they measure the compensation for disability by reference to loss of a specified member of the body. The loss of a finger or a toe or even a member of the body might not in every instance produce incapacity, but even so, the Act will not admit of a proportionate reduction of compensation dependent upon degrees of capacity. *Knoxville Knitting Mills* v. *Gaylon,* 148 Tenn., 228; *Shelbyville* v. *Kendrick,* 161 Tenn., 149.

Nor can the disability resting on injury to a member of the body for which compensation is fixed by specific schedules be enlarged or transferred to another schedule by adding an unrelated pre-existing loss of a member from disease to the loss of another member caused by a

subsequent industrial injury. Such we conceive to be the intention expressed by our compensation law. This construction accords with the conclusion of the trial court and his judgment must be affirmed.