TENNESSEE PRODUCTS CORPORATION *v.* ATTERTON.

(*Nashville,* December Term, 1944.)

Opinion filed January 6, 1945.

A. A. KELLY, of South Pittsburg, for appellant.

TROTTER & BARGER and WALTER O'MILLINUK, all of Chattanooga, for appellee.

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

This is a compensation suit in which there was an award in favor of the employee for permanent partial loss of the use of an eye. There is no controversy as to the fact that the employee sustained an accident arising out of and in the course of his employment. He was totally disabled for a time and was paid compensation for total temporary disability.

He returned to work after a few months and brought this suit and recovered judgment as stated above. He was a miner and was knocked to the ground by a fall of rock or slate and his face driven against the floor of his working place. He sustained severe injuries to his nose and face, but the eyeball itself was not punctured or bruised in the accident. The contention of defendant is that since the eye, the member, was not injured he cannot recover any part of the benefit scheduled for loss or partial loss of that member. It appears that he is earning more money since he returned to work than he was before and the insistence is that he is entitled to no recovery at all.

The evidence shows that the employee's nose was badly mashed and one of the nasal passages obstructed. A tear duct from the eye empties into the nostril and by reason of the obstruction there could be no drainage from the particular eye. The result was that matter, or condensed tears, formed in the eye, interfering with vision, and, according to plaintiff, by reason of injuries the movements of the eye were affected, and there is some evidence that the nose, since it was disfigured, to some extent obstructs the line of vision.

The employee was given an operation and treatment by his employer. The operation brought about some drainage for the tear duct but the employee testified that pus still formed in his eye, that he could not move the

eye so well, and that he could not see as he did formerly. The employee said that he had to carry a rag with him and wipe out his eye while working about every ten minutes. Otherwise he could not see when the tears accumulated and congealed in the eye.

Testifying for the defendant, the physician who treated the employee said that there was no injury to the eyeball and that he tested the employee's vision and could find no defect in it that might be attributed to the injuries. That the employee had a slight astigmatism but such condition existed before the accident. The doctor, however, conceded that the vision of the eye would be obstructed when the tears formed in the member and condensed, and added that vision from that eye was just a question of keeping the eye clean.

We see no justification for interfering with the result reached below. Code, Section 6878, provides: "For the loss of an eye, fifty per centum of average weekly wages during one hundred weeks." And further: "In cases of permanent partial disability due to injury to a member resulting in less than total loss of use of such member not otherwise compensated in this schedule, compensation shall be paid at the prescribed rate during that part of the time specified in the schedule for the total loss or total loss of use of the respective member, which the extent of injury to the member bears to its total loss."

It seems clear to us, under testimony accredited by the chancellor, that the employee has sustained a permanent partial loss of the use of this eye. If vision becomes obstructed at frequent intervals by the accumulation of tears, certainly that interferes with the use of the member and it is the loss of the use of a member rather than injury to the member itself for which the compensation scheduled in Section 6878(c) of the Code is provided.

In *Sun Coal Co.* v. *Epperson*, 178 Tenn. 114, 156 S. W. (2d) 400, the flesh end of the employee's thumb was split open and a portion of the flesh was cut off, making that thumb slightly shorter than the thumb on the other hand. It was shown, however, that there was no loss of use of the injured thumb. The employee was able after the wound healed to use the member for all purposes for which it had been previously employed. He earned more after the accident than previously and was denied compensation. Although the statute provided specific compensation for the loss of a thumb, it was held that the employee had sustained no such loss and that his right to recover compensation was determined by the last paragraph of (c) of Section 6878 providing that in cases of permanent partial disability not enumerated the compensation should be fifty per centum of the difference between the wage of the workman at the time of the injury and the wage he was able to earn in his partially disabled condition. Since he was earning more after the injury compensation was denied him.

This construction of our statute is emphasized by the subsequent cases of *Standard Surety & Casualty Co.* v. *Sloan*, 180 Tenn. 220, 226, 173 S. W. (2d) 436, 149 A. L. R. 407, and *Crane Enamelware Co.* v. *Crawley*, 180 Tenn. 272, 174 S. W. (2d) 458, both referring to *Sun Coal Co.* v. *Epperson*.

The Chancellor had the employee before him and observed him, heard all the testimony, and concluded that the employee had suffered a 33⅓ per centum loss of the use of his eye and made an appropriate award. The decree of the chancellor will be affirmed.