## COX v. BLACK DIAMOND COAL MINING CO.

No. 1242.

United States District Court
E. D. Tennessee, N. D.

Oct. 31, 1950.

Broughton & Broughton, Knoxville, Tenn., James Fuson, Jellico, Tenn., for plaintiff.

J. R. Ketron, Tazewell, Tenn., for defendant.

ROBERT L. TAYLOR, District Judge.

On May 31, 1948, while at work in defendant's coal mine, plaintiff sustained a crushing injury to his left thigh, which necessitated amputation of the leg. This action is for benefits as for permanent total disability under the Tennessee Work-

men's Compensation Law, and the action is resisted on the ground that liability is limited to that provided for the loss of a leg. Sec. 6878, Williams' 1934 Code. In the cited section, "a leg" is not defined, and for that, and the additional reason that plaintiff complains of abdominal and other pains and adversely affected nerves, this is not a clear case for limiting recovery to that for loss of a scheduled member.

No exact measure has been made of the stump, and estimates vary its length from two to eight inches. Here again there is no exact standard of measurement, for it is not certain whether the bone or the external surface measures the length. The stump, exhibited by plaintiff, is of irregular shape, slanting inward to the crotch and somewhat resembling a cone, and for practical purposes the loss includes not only the leg, but also part of the fundament. Use of an artificial limb has been tried and abandoned as hopeless. So badly mangled was the thigh that plaintiff's life was saved only by an operation performed with the greatest expedition. The case was tried, and thereafter a partial new trial was had in order that additional testimony might be presented on whether plaintiff sustained other and simultaneous injuries which contributed to his disability, also, whether the thigh injury had progressed to other parts of the body, with the result that all the consequences of the accident have combined to produce permanent total disability. Plaintiff testified a second time and defendant introduced depositions of physicians relative to examinations of plaintiff, both before and after the first trial. As to plaintiff's stomach and abdominal pains, the medical testimony provides only a possible explanation, namely, that injury to the deep veins of the thigh might have caused phlebitis. Pains such as plaintiff complains of are symptomatic of phlebitis, and crushing of the veins is a normal cause of that affliction. To that extent the physicians were willing to testify, but they would not say that plaintiff is presently suffering from phlebitis or, if he is so suffering, that the thigh injury is its cause. As to symptoms near the surface area of the stump, the medical testimony is that they are not now present.

The inferences indicated by the medical testimony are that plaintiff was not injured other than in the thigh region and that the injury there has not progressed to other parts of the body.

That testimony, however, does not stand unconverted, for the operating surgeon, though noncommittal as to the presence or cause of any existing phlebitis, recalled that when plaintiff was first brought to his hospital he had a "severely crushed thigh and was in a desperate state of shock." The accident occurred May 31, 1948, and at the first hearing March 2, 1950, plaintiff testified that his nerves are bad, that he does not sleep well, that the stump continues tender and aches and throbs, and that he has what he called rheumatic pains in the stump or its immediate vicinity. Moreover, the Court observed him closely during both hearings and found him to be still a person somewhat unnerved physically and numbed mentally. That he can never wear an artificial limb is thoroughly believable. He presently gets about with the aid of crutches and resort to their aid will probably be a necessity for the rest of his life.

Plaintiff is forty-six years of age. At the time of his injury he had been working in coal mines for twenty-eight years. He is uneducated, having advanced no farther in school than the second reader. Following his convalescence he asked for employment with his former employer, the defendant, and was told that the defendant had no work for him. Coal mining is the only kind of work he knows how to do. That kind of work he can no longer do, for the reason that he is there unemployable, and he has not tried to rehabilitate himself elsewhere for the reason that he regards himself as being "in no shape to work." With his conclusion the Court agrees. The Court regards him as permanently and totally disabled to do the only kind of work he knows how to do, and this is equivalent to general disability for the reason that he has no qualifications left that would fit him for earning a livelihood at anything. This disability, the Court finds, is due to two things; first, the crushing injury to his thigh, and second, the dis-

abling effects of that injury upon the rest of his body.

The law as to compensability in this State, being largely interpretative of the statute, is necessarily in the formative stage. In Phillips v. Diamond Coal Mining Co., 175 Tenn. 191, 133 S.W.2d 476, 477, the employee sustained an injury that necessitated amputation of the right leg just below the hip. Recovery was limited to that provided for the loss of a scheduled member. In that case, however, the trial court excluded evidence as to injury extending beyond the leg because no further injury had been alleged in plaintiff's petition, and in stating the applicable law the Supreme Court said: "Where the injury is *confined* to the loss of a single member of the body compensation is limited to the sum which the statute specifically provides for such loss, regardless of the earning capacity of the injured employee." 175 Tenn. 193, 133 S.W.2d (Emphasis supplied.) See, also, 21 Tenn.L. Rev. 208, where it is said: "The cases seem to be in agreement that when there is loss of a member and the injury definitely is confined to that member of the body, compensation should be limited to the sum specifically provided in the statute for loss of that member, regardless of the extent of the loss of earning capacity of the injured employee," citing Tennessee Products Corp. v. Atterton, 182 Tenn. 110, 184 S.W. 2d 371; Crane Enamelware Co. v. Crawley, 180 Tenn. 272, 174 S.W.2d 458; Phillips v. Diamond Coal Mining Co., 175 Tenn. 191, 133 S.W.2d 476; Catlett v. Chattanooga Handle Co., 165 Tenn. 343, 55 S.W.2d 257. The same writer observed, however, that where injury to a specific member spreads to other parts of the body and is not confined to that member, it is well established that there can be an award for total permanent disability based on loss of earning capacity, citing Russell v. Virginia Bridge & Iron Co., 172 Tenn. 268, 111 S.W.2d 1027; Central Surety & Insurance Corp. v. Court, 162 Tenn. 477, 36 S.W.2d 907; Kingsport Silk Mills v. Cox, 161 Tenn. 470, 33 S.W.2d 90, and the case that was under examination by the writer, namely, Johnson v. Anderson, 188 Tenn. 194, 217 S.W. 2d 939. To those citations should be added the recent case of J. M. Gallagher Co., Inc., et al. v. Lane, Tenn.Sup., 229 S.W.2d 347.

Where there is an injury which disables the body, amputation of a member is merely an incident to, not the cause of, the disability. In the case last cited above, the employee fell and shattered the bones of a leg, and the use of the leg was never regained. He was awarded compensation for total permanent disability, whereas, the employer sought to limit its liability to that for loss of use of a leg. The award was affirmed on the finding of the trial judge "that as a direct and proximate result *of his injuries,* the petitioner is totally and permanently incapacitated from working at an occupation which brings him an income." (Emphasis supplied.)

Examination of the compensation statute discloses no distinction between a total disability attended by the actual loss of a leg and a total disability attended by the loss of use of a leg. It seems but a natural conclusion that when a crushing blow falls upon a man's thigh, injurious results would flow in both directions from the point of contact, and that an amputation of the part below could not wipe out the damage done above. Absence of phlebitis (a result of venous injury) does not rule out the presence of shattered nerves, mental shock, and the undefined but inevitable aftermath of severance of muscle, bone, connecting, and arterial tissues. Indeed, the compensation law makes adequate provision for disability extending beyond the loss of a leg, in that the loss of a leg is listed as a permanent partial disability but is not limited to that. Code sec. 6878. Where the injury is confined to the loss, or loss of use, of a leg and the disability is less than total, benefits are as provided in sec. 6878(c). Where the injury results in total and permanent disability, benefits are those provided in sec. 6878(e). This is the conclusion to be drawn from the case of Johnson v. Anderson, 188 Tenn. 194, 217 S.W.2d 939, 941, where the court, after quoting from 6878 (c) and 6878(e), said: "This Court found a conflict between the quoted provisions and applying that construction most favorable to the claimant, has held in a number of reported decisions discussed in Plumlee v.

Maryland Casualty Co., supra [184 Tenn. 497, 201 S.W.2d 664], that where the loss of the use of a leg resulted in the total and permanent loss of earning capacity, that the award should be based on total permanent loss of earning capacity, and not merely for the scheduled sum for the *loss* or *loss of use* of the limb. Under a familiar principle of statutory construction the Court has so held that the later subsection (e) prevailed over the earlier subsection (c) * * *." (Emphasis supplied.) In J. M. Gallagher Co., Inc., et al. v. Lane, Tenn.Sup., 229 S.W.2d 347, the Tennessee Supreme Court applied the same rule.

Upon the finding that plaintiff is permanently and totally disabled within the meaning of sec. 6878(e), he is entitled to an award as provided therein, and to such other benefits as are provided by the compensation statute.