Aerosol Corporation of the South and Aetna Casualty & Surety Company, Plaintiffs in Error,

*v.*

Dorothy Mae Johnson, Defendant in Error.

435 S.W.2d 832.

(*Jackson,* April Term, 1968.)

Opinion filed December 13, 1968.

RONALD M. HARKAVY, Memphis, for plaintiffs in error.

DON OWENS, Memphis, for defendant in error.

MR. JUSTICE CRESON delivered the opinion of the Court.

The above case is before this Court on appeal in error from a judgment of the Circuit Court of Shelby County, Division I. That court entered judgment for the defendant in error upon evidence open to variant conclusions, on a basis of 40 per cent permanent partial impairment to the vision of her right eye.

The case is fraught with difficulty and completely justifiable differences of opinion as to the proper conclusion to be reached. We are constrained to say that the record, as a whole, is conclusive of the notion that the trial judge gave this case a considerable degree of mature and discriminating thought, burdened with full realization of what is referred to just above.

The facts of the case are not in substantial dispute. While working for Aerosol Corporation of the South, defendant in error suffered injuries to her hand and right eye, from the explosion of an Aerosol can. For something over seventeen weeks she was absent from her work; and was paid $564.95 in temporary total disability benefits, with medical expenses in addition. A noted ophthamologist of the City of Memphis, Dr. Philip M. Lewis, known to the trial judge and this Court, testified from his treatment of Dorothy Johnson. His examination indicated a rupture of the choroid, a membrane in the interior of the eye between the retina and the sclera, and a definite scar in the posterior of the eye.

It was Dr. Lewis' opinion that Dorothy Johnson's vision, prior to the explosion, was, in all probability, the same in both eyes. He fixed her visual efficiency prior to the accident at 20/30, a figure indicating that her vision prior to the accident was 10 per cent below normal. He found her vision in the right eye after the explosion to be 20/100, or 50 per cent below normal. He was further of opinion, however, that 40 per cent of the visual impairment of the right eye could be attributed to the accident; and found that with use of corrective lenses the vision of the right eye was 20/50. Employing a medic arithmetic formula, Dr. Lewis found corrected visual loss in the right eye to be 16.67 per cent.

Dr. Charles M. King also examined Dorothy Johnson. He found a 60 per cent uncorrected impairment to the vision of her eye, and that such impairment could be corrected to a 10 per cent loss. Dr. King stated that the 10 per cent loss was a probable consequence of the explosion, but declined to attribute the 60 per cent uncorrected loss to the explosion.

As indicated before, in an able memorandum opinion the trial court adopted Dr. Lewis' findings as the more logical approach to determine the amount of visual impairment on both the uncorrected and corrected basis. The trial court held that the amount of visual impairment sustained in an industrial accident should be determined upon an uncorrected basis; and that Mrs. Johnson's benefits should thus be determined upon the basis of a 40 per cent loss of use of the eye.

Plaintiffs in error have filed two assignments of error, as follows:

"1. There is no evidence in the record to support the judgment of the Trial Court awarding 40 per cent permanent partial disability of the right eye.

This was error because all of the evidence was to the effect that the defendant employee sustained a permanent partial disability to her right eye corrected by glasses in the amount of 10 per cent as set out by Dr. Charles King or 16.67 per cent as stated by Dr. Philip Lewis.

2. The Court erred in holding that Workmen's Compensation Benefits For Disability to the vision of an injured eye should be determined without the use of corrective lenses.

This was error because Workmen's Compensation disability benefits should be based upon loss of vision as adjusted by the use of corrective lenses as explained by Dr. Philip Lewis in his letter of November 25, 1967, made in exhibit to his testimony."

As the above assignments indicate, and the briefs verify, the one issue argued is whether or not Workmen's

Compensation benefits for permanent partial loss of use of one eye are to be determined upon a basis of corrected loss of vision, or upon a basis of uncorrected loss of vision.

We have searched prior decisions of this Court in compensation cases only to find that none supplies a specific, well-delineated answer to this question. It is plain, however, that the solution lies solely within the ambit of the Tennessee Workmen's Compensation statute.

The compensation law of this State contains a schedule of injuries to members of the body; and this schedule governs as to what award, if any, shall be made to one sustaining either total or partial loss, or loss of use, of a member scheduled. Under this statutory system, such award is not measured by diminution of the employee's earning capacity; and equally so, the award for loss of use of a member is measured by the value fixed in this statute, or a percentage thereof in case of less than total permanent loss of use. See T.C.A. sec. 50-1007; *Catlett v. Chattanooga Handle Co.* (1932), 165 Tenn. 343, 55 S.W.2d 257; *New Jellico Coal Co. v. Gilburth* (1948), 187 Tenn. 606, 216 S.W.2d 329. See also *Shores v. Shores* (1965), 217 Tenn. 96, 395 S.W.2d 388.

The pertinent statutory provisions, other than the main schedule, are as follows:

"50-1004. *Medical attendance—Death benefits—Total liability of employer.—Submission to physical examinations—Autopsy.—*For not exceeding two (2) years after notice of injury, the employer or his agent shall furnish free of charge to the employee such medical and surgical treatment, medicine, medical and surgical supplies, crutches, artificial members, and other apparatus,

..such nursing services as ordered by the attending .physician and hospitalization, including such dental .. work made reasonably necessary by accident as herein defined, as may be reasonably required.

.      *      *      *

Where the nature of the injury or occupational disease, as defined in sec. 50-902, is such that it does not disable the employee but reasonably requires medical, surgical or dental treatment or care, medicine, surgery and dental treatment, medicine, medical and surgical supplies, crutches, artificial members, and other apparatus shall be furnished by the employer within the limits of this section.

*      *      *

If the injured employee refuses to comply with any reasonable request for examination or to accept the medical or specialized medical services which the employer is required to furnish under the provisions of this law, his right to compensation shall be suspended and no compensation shall be due and payable while he continues such refusal.''

''50-1007. *Schedule of compensation—Specific indemnities for certain injuries—Pay for concurrent injuries —Permanent partial disability.*—The following is the schedule of compensation to be allowed employees under the provisions of the Workmen's Compensation Law: * * *

(c) PERMANENT PARTIAL DISABILITY. In case of disability partial in character but adjudged to be permanent, there shall be paid to the injured employee, in addition to the benefits provided by sec. 50-1004, the following: (1) sixty-five per cent (65%) of his average

weekly wages for the period of time during which he suffers temporary total disability on account of the injury, the same being subject to the same limitation as to minimum and maximum as provided in subsection (a) of this section; and (2) in addition to the foregoing he shall receive sixty-five per cent (65%) of his average weekly wages in accordance with the schedule hereinafter set out, provided, that the compensation paid the injured employee for the period of temporary total disability and temporary partial disability shall not be deducted from the compensation to be paid under said schedule. * * *

For the loss of an eye, sixty-five per cent (65%) of average weekly wages during one hundred (100) weeks. * *

PERMANENT PARTIAL DISABILITY IN CERTAIN CASES. In cases of permanent partial disability due to injury to a member resulting in less than total loss of use of such member not otherwise compensated in this schedule, compensation shall be paid at the prescribed rate during that part of the time specified in the schedule for the total loss or total loss of use of the respective member, which the extent of injury to the members bears to its total loss. If an injured employee refuses employment suitable to his capacity, offered to or procured for him, he shall not be entitled to any compensation at any time during the continuance of such refusal, unless at any time in the opinion of the judge or chairman of the county court of the county of his residence such refusal is justifiable. All compensations provided, in clause (c) of this section for loss to members, or loss of use of members, are subject

to the same limitations as to maximum and minimum as are stated in clause (a). * * *''

It is argued, and it is correct to say, that the Tennessee statutes leave a vacuum in cases such as the instant one. This is assuredly understandable, for it will take a work of legal artistry to state a comprehensive rule which will adequately resolve all the problems inherent in permanent partial loss of use cases; and critically so where degree of loss less than total is remediable by corrective measures.

A painstaking and extended examination of the statutes and decisions of the courts of other jurisdictions on the issue here discloses, at its best, a wide range of opinion, laboriously arrived at by frustrating effort. Apparently, those jurisdictions which predicate amount of award of compensation benefit upon diminution of earning capacity, do so upon a basis of corrected loss of vision; while those jurisdictions which utilize statutory schedules and a percentage of total in case of partial loss of use, adopt the basis of uncorrected loss of vision.

We have examined a host of cases and annotations such as those in 99 A.L.R. 1498 and 142 A.L.R. 822.

The divergent views appear as well as in any in the cases of *Lambert v. Industrial Commission, et al.* (1952), 411 Ill. 593, 104 N.E.2d 783; *Hurley v. E. R. Wolcott, Inc., et al.* (1967), 27 A.D.2d 788, 277 N.Y.S.2d 601; *Graf v. National Steel Products Co., et al.* (1931), 225 Mo.App. 702, 38 S.W.2d 518; *Livingston v. St. Paul Hydraulic Hoist Co., et al.* (1938), 203 Minn. 62, 279 N.W. 829.

Examples can be conceived, but they do no more than reveal the difficulties and potential inequities in-

herent in adoption of either of the views suggested and contended for as the absolute; they are both mischievous. Each discloses a potentiality to deprive an employee of compensation which the general intendment of the Workmen's Compensation law seems to invest him with. Even more significant is the idea that such judicial result would closely approach, if not fully arrive at, usurpation of legislative function and authority. The Bench and Bar of this State know that the Tennessee Workmen's Compensation system is solely a creation of the Legislature. Further enactment in this field rests with the legislative branch of the government of Tennessee, not the judicial.

In the instant case, the court below found as a fact that defendant in error sustained a 40 per cent loss of visual efficiency in her right eye. The extent of disability in a Workmen's Compensation case is a question of fact; and, if such finding be supported by material evidence, it is binding on this Court. See *Armstrong v. Spears* (1965), 216 Tenn. 643, 393 S.W.2d 729, and many other cases.

Up to the present time, the Tennessee courts have applied a basis for determination of award for partial loss of use (1) without reduction of that degree remediable by artificial aid, and (2) without confrontation with the present contention and issue. *Tennessee Products Corporation v. Atterton* (1945), 182 Tenn. 110, 184 S.W.2d 371. Such application of the statute is not now to be disregarded by the Court.

Thus, the judgment of the trial court is affirmed, with costs assessed to the plaintiffs in error.

BURNETT, CHIEF JUSTICE, and DYER, CHATTIN and HUMPHREYS, JUSTICES, concur.