Frederick J. LANG

v.

NISSAN NORTH AMERICA, INC.

Supreme Court of Tennessee,
at Nashville.

June 8, 2005 Session.

Aug. 16, 2005.

Andrée Sophia Blumstein, Nashville, Tennessee (on appeal to the Supreme Court), and Van French and Larry G. Trail, Murfreesboro, Tennessee (at trial and on appeal to the Special Workers' Compensation Appeals Panel), for the appellant Nissan North America, Inc.

Branch H. Henard, III, Nashville, Tennessee (on appeal to the Supreme Court), and Mark A. Baugh, Nashville, Tennessee (at trial and on appeal to the Special Workers' Compensation Appeals Panel), for the appellee Frederick J. Lang.

Terry L. Hill, Nashville, Tennessee (on appeal to the Supreme Court), for amicus curiae the National Federation of Independent Business Legal Foundation.

## OPINION

FRANK F. DROWOTA, III, C.J., delivered the opinion of the court, in which E. RILEY ANDERSON, JANICE M. HOLDER, and WILLIAM M. BARKER, J.J., joined. ADOLPHO A. BIRCH, JR., J., did not participate.

In this case, an employee suffered work-related binaural hearing loss which has resulted in a 22% to 26% permanent medical impairment rating. The employee has missed no work as a result of this impairment. Focusing on the employee's continued ability to work, the trial court awarded the employee 9% of 150 weeks for loss of hearing as a scheduled member. On appeal, the Special Workers' Compensation Appeals Panel increased the employee's award to 45% of 150 weeks. Based on our independent review of the preponderance of the evidence, *see* Tenn.Code Ann. § 50–6–225(e)(2) (1999), we conclude that the trial court improperly discounted the extent of both the anatomical impairment and the vocational disability suffered by the employee. In our view, the evidence preponderates against the trial court's award of 9% disability benefits for loss of hearing and in favor of the Panel's 45% award; we therefore adopt the Panel's modification of the trial court's award and affirm the trial court's award of benefits to the employee as so modified. However, in the course of explaining its decision, the Panel referred to the employee's "loss of his ability to enjoy normal, everyday activities." We vacate the Panel's decision insofar as the Panel may have recognized the loss of enjoyment of life, or hedonic damages, as a basis for the recovery of workers' compensation benefits. For the purpose of establishing anatomical or vocational disability in workers' compensation

cases, it is appropriate to consider how a work-related injury affects an employee's capacity to engage in normal, everyday activities; however, we hold that Tennessee workers' compensation law does not recognize hedonic damages—damages for the loss of enjoyment of life—as a basis for the recovery of benefits.

## I. *Factual and Procedural Background*

The plaintiff, Frederick J. Lang, was an employee of the defendant, Nissan North America, Inc., a company which manufactures automobiles. Mr. Lang began working at Nissan's Rutherford County facility in 1985 as an assembly-line technician in the trim and chassis plant. Eventually he was promoted to line leader in trim and chassis, a position which reduced somewhat the amount of time he spent working directly on the assembly line. Over the course of Mr. Lang's lengthy employment with Nissan, his work environment has been characterized by the sound of various machinery and power tools, as well as music emanating from personal radios used by other employees.

In 1999, Mr. Lang first complained to Nissan of hearing loss, noting specifically that he could no longer hear the alarm which indicates that the assembly line has been paused. Nissan accommodated him by installing a tier light which visually indicates the assembly line's status. In 2001, at Nissan's request Mr. Lang underwent a hearing test which showed significant hearing loss. After being examined

in 2002 by Wesley Moore, M.D., Nissan's plant physician, and William L. Downey, M.D., a specialist in otolaryngology[1], Mr. Lang filed this action seeking workers' compensation benefits from Nissan for permanent loss of hearing in both ears.

Two medical experts testifying via deposition rated Mr. Lang's permanent hearing loss based on audiograms and the American Medical Association *Guides to the Evaluation of Permanent Impairment.* Dr. Downey, whom Mr. Lang had selected from a panel of physicians offered to him by Nissan, assigned Mr. Lang a permanent binaural hearing loss rating of 26.6%. The defendant's expert, otolaryngologist Mitchell Schwaber, M.D., examined Mr. Lang in 2003 and assigned him a permanent binaural hearing loss of 22.5%. Although there is evidence in the record that Mr. Lang had some level of pre-employment hearing loss, Nissan does not contest causation in this appeal.[2]

At trial, various testimony was introduced regarding the effects of Mr. Lang's hearing loss. According to Mr. Lang and his wife, Cheryl D. Lang, Mr. Lang cannot hear high-pitched sounds such as alarms and ringing telephones. He has trouble understanding another person speaking when he cannot see that person face-to-face. According to Mrs. Lang, he also tends to speak too loudly. However, Mr. Lang's area manager at Nissan, Joe Shelton, testified that he has not had trouble communicating with Mr. Lang at work. Dr. Downey testified that Mr. Lang's hear-

1. "Otolaryngology" is defined as "[t]he combined specialties of diseases of the ear and larynx, often including upper respiratory tract and many diseases of the head and neck...." *PDR Medical Dictionary* 1272 (Marjorie Spraycar ed.1995).

2. Both at trial and on appeal before the Special Workers' Compensation Appeals Panel, the parties focused much of their debate on

whether Mr. Lang's hearing loss was caused by his employment at Nissan. The trial court and Panel resolved this issue in favor of Mr. Lang. Because Nissan does not appeal causation here and we find no reason to disturb the trial court's or the Panel's judgment on this issue, we need not address the evidence concerning causation.

ing loss not only increases the need for him to face a person who is speaking but also causes him to miss about 25% of ordinary conversation. Dr. Downey and Dr. Schwaber each determined that Mr. Lang needs hearing aids to correct his hearing loss, but they also each determined that he should not wear them while working at Nissan because doing so could further damage his hearing by amplifying industrial noise.

Mr. Lang, who was forty-three years old at the time of trial, has missed no time at work as a result of his hearing loss and has continued in his position as line leader. In fact, Mr. Lang has received excellent job-performance evaluations during his longstanding employment with Nissan. He has not sought work outside of Nissan.

Mr. Lang has a high-school education, and in 1985 he received a certificate for industrial training in trim and chassis work from the Tennessee State Board for Vocational Education. His employment history prior to working for Nissan is brief. During high school, Mr. Lang worked part-time at a restaurant as a dishwasher and at a grocery store as a bagger and meat-department assistant. After graduating from high school, he spent about six years in Nashville working in various capacities for the Noland Company, holding positions as receiving clerk, counter salesperson, and assistant purchasing manager; as evidenced by his employment application to Nissan, the latter two positions required a significant amount of telephone use.

The trial court held that Mr. Lang's hearing loss was related to his work at Nissan. Having so held, the trial court awarded Mr. Lang disability benefits of 9% of 150 weeks for loss of hearing, or 13.5 weeks of benefits at his compensation rate. In making this award which fell below Mr. Lang's level of anatomical impairment, the trial court focused almost exclusively on vocational disability and the fact that Mr. Lang was able to continue working at his pre-injury position without interruption. "We find the most significant factor . . . in our determination of the percentage of vocational disability to be the Plaintiff's ability to work despite his injury." The trial court further explained: "[D]espite very high anatomical impairment ratings, which, for a trained musician or another worker largely dependent upon the skill of hearing and deciphering sounds with precision would be crucial, the Plaintiff's loss affects him more minimally." In sum, the trial court determined Mr. Lang's hearing loss "to be only a minor factor in his employability."

Mr. Lang appealed as of right to the Special Workers' Compensation Appeals Panel, contending that the evidence preponderates in favor of a larger disability award. Agreeing with Mr. Lang, the Panel increased his disability award to 45% of 150 weeks for loss of hearing, or 67.5 weeks of benefits at his compensation rate. The Panel correctly explained that Mr. Lang's "employability in the open labor market has been impacted." The Panel's opinion also included the following statement: "Even though the employee lost no time off work due to the injury and continues to work in the same or similar position, there has been a loss of his ability to enjoy normal, everyday activities generally taken for granted because hearing is required for virtually every human function."

Nissan sought discretionary review by the Supreme Court en banc, seeking reinstatement of the trial court's award and arguing that the Panel had inappropriately considered hedonic damages—the loss of enjoyment of life—as a basis for a workers' compensation award. We granted Nissan's motion for full-Court review.

## II. *Analysis*

We granted this appeal to resolve two issues: first, whether the evidence preponderates against the trial court's award of 9% disability benefits for loss of hearing; and second, whether the Panel improperly considered hedonic damages—damages for the loss of enjoyment of life—as a basis for a workers' compensation award.

### A. Preponderance of the Evidence

 This is a scheduled-member compensation case. The employee seeks workers' compensation benefits for the permanent, partial loss of hearing in both ears, an injury which is governed by the statutory schedule for hearing loss provided in Tennessee Code Annotated section 50–6–207(3)(A)(ii)(r) (1999 & Supp.2004) ("For the complete permanent loss of hearing in both ears, sixty-six and two-third percent (66⅔%) of average weekly wages during one hundred fifty (150) weeks[.]"). The schedule compensates an employee for the " 'loss of use of the power or sense of hearing, rather than for an injury to the physical structure of the ear.' " *H.K. Ferguson Co. v. Kirk*, 208 Tenn. 87, 343 S.W.2d 900, 903 (1960) (quoting *Jackson v. Diamond Coal Co.*, 156 Tenn. 179, 299 S.W. 802, 803 (1927)). The extent of an injured worker's permanent disability is a question of fact. *Jaske v. Murray Ohio Mfg. Co.*, 750 S.W.2d 150, 151 (Tenn.1988).

 Appellate review of the trial court's findings of fact is "de novo upon the record of the trial court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise." Tenn.Code Ann. § 50–6–225(e)(2) (1999). No deference to the trial court is warranted in reviewing documentary proof, such as expert medical testimony presented by deposition, because the appellate court stands in as good a position as the trial court. *See McIlvain v. Russell Stover Candies, Inc.*, 996 S.W.2d 179, 183 (Tenn.1999). Although we must extend considerable deference to the trial court's factual findings where the trial court has seen and heard witnesses and issues of the credibility or weight of oral testimony are involved, *Gray v. Cullom Mach., Tool & Die, Inc.*, 152 S.W.3d 439, 442 (Tenn.2004); *Ferrell v. Cigna Prop. & Cas. Ins. Co.*, 33 S.W.3d 731, 734 (Tenn. 2000), in workers' compensation cases we ultimately conduct an independent review to determine where the preponderance of the evidence lies, *see* Tenn.Code Ann. § 50–6–225(e)(2); *Cleek v. Wal–Mart Stores, Inc.*, 19 S.W.3d 770, 773–74 (Tenn. 2000).

 In determining the preponderance of the evidence as to the extent of disability, the trial court determined that "despite very high anatomical impairment ratings," Mr. Lang's hearing loss was "only a minor factor in his employability." We must bear in mind the distinct roles which anatomical impairment and vocational disability play in scheduled-member cases. Significantly, vocational disability is "not an essential ingredient to recovery for the loss of use of a scheduled member." *Duncan v. Boeing Tenn., Inc.*, 825 S.W.2d 416, 417 (Tenn.1992) (citing *Oliver v. State*, 762 S.W.2d 562, 566 (Tenn.1988)). It is well settled that an employee may recover for injury to a scheduled member without regard to loss of earning capacity. "[A] worker does not have to show vocational disability or loss of earning capacity to be entitled to the benefits for the loss of use of a scheduled member." *Id.; see Oliver*, 762 S.W.2d at 565–66; *Aerosol Corp. of the South v. Johnson*, 222 Tenn. 339, 435 S.W.2d 832, 834 (1968).

Consequently, we conclude that the trial court improperly discounted Mr. Lang's significant hearing loss. Dr. Downey and

Dr. Schwaber, both qualified medical experts, respectively rated Mr. Lang's permanent binaural hearing loss at 26.6% and 22.5%, ratings which reflect close agreement as to the level of anatomical impairment. Dr. Downey explained that this hearing loss causes Mr. Lang to miss about 25% of ordinary conversation. There was also lay testimony from Mr. Lang and his wife as to Mr. Lang's inability to hear high-pitched sounds such as alarms and ringing telephones and the trouble he has understanding another person speaking when he cannot see that person face-to-face.[3] In sum, the evidence shows significant loss of hearing as a scheduled member.

In fashioning Mr. Lang's scheduled-member award, we may also consider the extent of his vocational disability. Although vocational disability is not an essential ingredient to recovery for loss of use of a scheduled member, evidence of vocational disability is admissible in determining the amount of scheduled-member compensation. *See Duncan,* 825 S.W.2d at 417–18. Once causation and permanence have been established by expert medical testimony, in determining the extent of vocational disability a trial court must consider all the relevant evidence, including both expert and lay testimony. *See Nelson v. Wal–Mart Stores, Inc.,* 8 S.W.3d 625, 629 (Tenn.1999). Factors include the employee's age, education, job skills and training, the extent and duration of anatomical impairment, local job opportunities, and the employee's capacity to work at the kinds of employment available to one in the employee's disabled condition. *McIlvain,* 996 S.W.2d at 183.

The trial court stressed as "most significant" the fact that Mr. Lang was able to continue working at his pre-injury position without interruption. The fact that an employee has not missed work or has returned to work is relevant to determining vocational disability. *See George v. Bldg. Materials Corp. of Am.,* 44 S.W.3d 481, 488 (Tenn.2001); *Corcoran v. Foster Auto GMC, Inc.,* 746 S.W.2d 452, 459 (Tenn.1988). The trial court thus properly considered the facts that Mr. Lang missed no work as a result of his hearing loss and performed well in his position as line leader. However, missing no work and returning to work are merely single factors among the total circumstances and are not themselves dispositive. *See Corcoran,* 746 S.W.2d at 459. Vocational disability is "measured not by whether the employee can return to her former job, but whether she has suffered a decrease in her ability to earn a living." *Walker v. Saturn Corp.,* 986 S.W.2d 204, 208 (Tenn.1998). Vocational disability results when "the employee's ability to earn wages in any form of employment that would have been available to him in an uninjured condition is diminished by an injury." *Corcoran,* 746 S.W.2d at 459.

Mr. Lang testified that he has trouble understanding another person speaking when he cannot see that person face-to-face, testimony which was corroborated by Dr. Downey. Mr. Lang misses about 25% of normal conversation and cannot hear high-pitched sounds such as ringing telephones. Further, both Dr. Downey and Dr. Schwaber determined that Mr. Lang needs hearing aids to correct his hearing loss, but they also determined that he should not wear them while working at

---

**3.** Although the trial court expressed some doubt as to the credibility and weight of various testimony concerning the issue of causation (which was resolved in Mr. Lang's favor),

the trial court found the testimony concerning the effects of Mr. Lang's hearing loss to be fully credible.

Nissan because doing so could further damage his hearing by harmfully amplifying industrial noise. Consequently, Mr. Lang requires accommodation at work for his reduced hearing capacity, and for this reason Nissan commendably installed a tier light along the trim and chassis assembly line. During the vast majority of Mr. Lang's employment history, he has specialized in auto assembly line work in trim and chassis. His only education beyond high school is represented by a certificate for short-term industrial training in trim and chassis work from the Tennessee State Board for Vocational Education. His primary acquired job skills and training thus focus on a particular kind of assembly-line manufacturing.

 Although Mr. Lang does not make his living as a trained musician, it is reasonable to conclude that the combination of his hearing loss with the restriction against wearing hearing aids in industrial settings would detract from his employability in the jobs for which he is most qualified. Further, his prior short-term experience in positions as counter salesperson and assistant purchasing manager included a significant amount of telephone use. In our view, the trial court underemphasized the obvious negative effects of Mr. Lang's hearing loss on his ability to compete in the open labor market. *See Downs v. CNA Ins. Co.*, 765 S.W.2d 738, 742 (Tenn.1989). The workers' compensation laws are remedial in nature and must be construed liberally to accomplish their intended purpose. *Mackie v. Young Sales Corp.*, 51 S.W.3d 554, 556 (Tenn.2001).

In sum, we conclude that the evidence preponderates against the trial court's 9% award of disability benefits for loss of hearing as a scheduled member and in favor of the Panel's 45% award. Therefore, we adopt the Panel's disability award to Mr. Lang of 45% of 150 weeks for loss of hearing, or 67.5 weeks of benefits at his compensation rate, and affirm the trial court's award of disability benefits to Mr. Lang as so modified.

## B. Loss of Enjoyment of Life as a Basis for Workers' Compensation Recovery

In the course of deciding this case, the Panel made the following statement: "Even though the employee lost no time off work due to the injury and continues to work in the same or similar position, there has been a loss of his ability to enjoy normal, everyday activities generally taken for granted because hearing is required for virtually every human function." The second issue which we must address is whether the Panel improperly considered the loss of enjoyment of life as a basis for workers' compensation recovery. This is a question of law which we review de novo with no presumption of correctness. *Dotson v. Rice–Chrysler–Plymouth–Dodge, Inc.*, 160 S.W.3d 495, 500 (Tenn.2005).

Even without taking into account Mr. Lang's loss of enjoyment of life as a measure of recovery, as discussed above we have determined that a 45% disability award is correct. Therefore, the extent to which the Panel may have relied on loss of enjoyment as a measure of recovery does not affect our review of how the evidence preponderates in this case. Nevertheless, at Nissan's urging we address this issue in order to prevent confusion which might result from the Panel's statement that Mr. Lang has suffered a "loss of his ability to enjoy normal, everyday activities."

 The loss of enjoyment of life, also referred to as hedonic damages, *Jordan v. Baptist Three Rivers Hosp.*, 984 S.W.2d 593, 595 (Tenn.1999), is a noneconomic element of compensatory damages typically associated with personal injury tort claims. Loss of enjoyment compen-

sates an injured person for impairment of the capacity to enjoy the normal pleasures of living. *See Martin v. Southern Ry. Co.,* 225 Tenn. 77, 463 S.W.2d 690, 691 (1971); *Overstreet v. Shoney's, Inc.,* 4 S.W.3d 694, 715–16 (Tenn.Ct.App.1999).

In workers' compensation cases, it is appropriate to consider how a work-related injury affects an employee's capacity to engage in normal, everyday activities insofar as that inquiry is oriented toward establishing anatomical or vocational disability. For example, in *McIlvain* this Court considered an injured employee's inability to do household chores and the difficulty and pain she encountered in performing other routine activities such as driving a car, writing, buttoning her clothes, and tightening jar lids. 996 S.W.2d at 183. However, we considered these facts merely to determine the employee's proper levels of anatomical and vocational disability and not in order to compensate her for her loss of enjoyment of these features of life. *See id.* at 183–84.

Simply put, Tennessee workers' compensation law does not recognize the loss of enjoyment of life as a basis for the recovery of benefits. *Cf. Ridings v. Ralph M. Parsons Co.,* 914 S.W.2d 79, 81 (Tenn.1996) (Tennessee's workers' compensation laws " 'restrict the amount of damages by excluding pain and suffering.' " (quoting *Rupe v. Durbin Durco, Inc.,* 557 S.W.2d 742, 749 (Tenn.Ct.App. 1976)); *Newman v. Nat'l Union Fire Ins. Co.,* 786 S.W.2d 932, 935 (Tenn.1990) (explaining necessary limitations on workers' compensation recovery)). Even the plaintiff, Mr. Lang, does not dispute this conclusion. Therefore, we vacate the Panel's decision insofar as the Panel may have

recognized hedonic damages as a basis for the recovery of workers' compensation benefits. The workers' compensation statutes do not provide for such common-law tort recovery, and it would be improper for us to judicially mandate it.

Further, recognizing hedonic damages as a basis for recovering benefits would run counter to the exclusive-remedy principle which reinforces the policy balance of workers' compensation law. One of the fundamental purposes of workers' compensation law is to compensate employees for work-related injuries irrespective of fault. *See* Tenn.Code Ann. § 50–6–103(a) (1999). However, in exchange for no-fault recovery, employees have limited recovery and relinquish certain common-law rights of action against their employers which they might otherwise have had. A delicate compromise between the interests of employers and employees thus lies at the heart of workers' compensation law. *See Clanton v. Cain–Sloan Co.,* 677 S.W.2d 441, 443 (Tenn.1984). In order to preserve this balance, workers' compensation law "constitutes a complete substitute for previous remedies in tort on the part of an employee." *Liberty Mut. Ins. Co. v. Stevenson,* 212 Tenn. 178, 368 S.W.2d 760, 762 (1963). Consequently, with few exceptions[4] workers' compensation law is the exclusive remedy for the work-related injuries which fall under its scope. *See* Tenn.Code Ann. § 50–6–108(a) (1999); *Liberty Mut. Ins. Co.,* 368 S.W.2d at 762. "The delicately balanced quid pro quo imposing no-fault liability in exchange for immunity from tort claims and limits on the amount of workers' compensation liability becomes illusory without a viable exclusive remedy rule." Joseph H. King, Jr., *The Exclusiveness of an Employee's Workers' Compensation Remedy Against*

---

4. For example, an employee is not precluded from recovering in tort for an employer's intentional harm. *See Gonzales v. Alman*

*Constr. Co.,* 857 S.W.2d 42, 46 (Tenn.Ct.App. 1993).

*His Employer,* 55 Tenn. L.Rev. 405, 411–12 (1988).

### III. *Conclusion*

In this scheduled-member compensation case, Mr. Lang has suffered permanent work-related binaural hearing loss which has also resulted in some degree of vocational disability. Based on our independent review of where the preponderance of the evidence lies, *see* Tenn.Code Ann. § 50–6–225(e)(2), we conclude that the evidence preponderates against the trial court's award of 9% disability benefits for loss of hearing as a scheduled member and in favor of the Panel's 45% award. Therefore, we adopt the Panel's disability award to Mr. Lang of 45% of 150 weeks for loss of hearing, or 67.5 weeks of benefits at his compensation rate, and affirm the trial court's award of benefits to Mr. Lang as so modified.

However, we vacate the Panel's decision insofar as the Panel may have recognized hedonic damages as a basis for the recovery of workers' compensation benefits. For the purpose of establishing anatomical or vocational disability in workers' compensation cases, it is appropriate to consider how a work-related injury affects an employee's capacity to engage in normal, everyday activities; however, we hold that Tennessee workers' compensation law does not recognize hedonic damages—damages for the loss of enjoyment of life—as a basis for the recovery of benefits.

Costs of this appeal are taxed to the defendant, Nissan, for which execution may issue if necessary.

ADOLPHO A. BIRCH, JR., J., did not participate.