William Wayne OLIVER, Jr., Plaintiff/Appellant,

v.

STATE of Tennessee, Defendant/Appellee.

Supreme Court of Tennessee, at Knoxville.

Dec. 5, 1988.

John T. McArthur, Kizer & Black, Maryville, for plaintiff/appellant.

Charles W. Burson, Atty. Gen., and Reporter, George H. Coffin, Jr., Asst. Atty. Gen., Nashville, for defendant/appellee.

## OPINION

DROWOTA, Justice.

In this appeal of a workers' compensation action from the Tennessee Claims Commission, the Plaintiff/Appellant, William Wayne Oliver, Jr., contends the Commissioner erred in denying him benefits on the basis that he failed to demonstrate he had an existing earning capacity which was diminished when his work-related disability appeared. Two primary issues were presented to the Commissioner: (1) whether the statute of limitations bars recovery, and (2) whether compensation should be determined by the schedule of benefits in effect at the time of the accident, 1965, or by the schedule in effect at the time the disability became apparent, 1985. The Commissioner found in favor of the Appellant on the statute of limitations issue.

The Commissioner did not reach the second issue because he found that Appellant failed to demonstrate that he had an existing earning capacity which was diminished when his work-related disability appeared.

The Appellant, William Wayne Oliver, Jr., began working with the Tennessee Game and Fish Commission (the predecessor to the Tennessee Wildlife Resources Agency) in 1963 at the age of 24. Appellant was a wildlife enforcement officer and on March 23, 1965, he was checking trout stamps, fishing licenses and limits in the valley of the three forks of Wolf River in Fentress County. He started down to the river's edge to check a fisherman's license and trout stamp and "slipped and fell and just took a header, bounced off a rock and landed out in a deep hole of water...." As a result of this fall, Appellant sustained a compound fracture to his left wrist and arm. At the time of the accident, a timely report was made to Appellant's immediate supervisor. After the accident, Appellant drove himself to the emergency room at Jamestown, Tennessee, where he was hospitalized and received treatment from Dr. Jack Smith, who set his broken wrist. Appellant returned to the hospital a few days later at Dr. Smith's request because an x-ray taken after the setting of the wrist indicated it had not been properly set. Appellant was placed under general anesthesia and the wrist was re-broken and re-set. As events later indicated, it appears that the doctor did not set the wrist correctly the second time. After wearing a cast for a few weeks, it was removed and the Appellant went about his normal duties without difficulty from the injury. Appellant returned to work and nothing led him to believe that he had any permanent damage as a result of the fracture. The record reveals that at the June 17, 1965 meeting of the Board of Claims, the Board approved payment of $90 to Dr. Jack Smith and $114 to Fentress County General Hospital. Plaintiff never received any compensation as a result of the accident.

In June 1966, the Appellant accepted a position with the U.S. Treasury Department as a special agent with the Bureau of

Alcohol, Tobacco and Firearms assigned to the Americus, Georgia office. In the Spring of 1967, the Plaintiff suffered a bad injury to his back when he fell off a cliff while moving through the woods in an effort to capture a criminal. After recovery, he returned to work, but later suffered an automobile accident in which his vehicle was rear-ended by a large truck, which accident aggravated his back injury. After recovery from these injuries, Appellant returned to work with the Treasury Department and continued to work there until 1974 when his supervisor determined that his physical condition would possibly present a danger to his fellow officers. He was asked to retire. Despite his wishes to the contrary, Mr. Oliver was prevailed upon by his supervisors and he retired under civil service disability. Appellant has not worked since January of 1974.

In the Spring of 1985, Appellant's wrist began to throb and twinge with pain and became swollen and red. Appellant testified that the pain radiates into the hand and affects the function and use of the hand. He stated that the wrist hurts most of the time and he takes aspirin for it. Appellant testified that his wrist was never reinjured from the time he left his employment with the State. His wrist had not troubled him until the Spring of 1985. Appellant testified that the pain in his wrist limits his driving and interferes with minor household chores. He also stated: "I've lost half the use of the wrist and hand and arm at least." As a result of the problems he was experiencing, Appellant was examined by Dr. J.C. Serrato, an orthopedic surgeon in Columbus, Georgia. Dr. Serrato submitted a report dated June 7, 1985, which indicates Mr. Oliver has a permanent anatomical change and impairment of the left upper extremity which is equivalent to a 50% disability to the left wrist joint. Dr. Serrato stated that this condition cannot be improved, it is permanent and it requires no specific treatment at the present time. Dr. Serrato further stated the impairment had resulted from the residuals of an injury Mr. Oliver received on the job in 1965.

The Appellant filed a claim for workers' compensation benefits with the Tennessee Division of Claims Administration on January 31, 1986, for injuries arising from a work-related accident which occurred on March 23, 1965. The claim was denied on February 7, 1986, on the basis that the statute of limitations had run in that the Appellant had failed to file the claim within one year of the date of the accident. Mr. Oliver appealed this denial to the Tennessee Claims Commission on February 13, 1986. By order dated December 31, 1987, the Commissioner found the Appellant suffered an anatomical impairment which did not manifest itself until approximately 20 years after the injury and approximately 11 years after Mr. Oliver ceased working. The Commissioner further held that Appellant had filed within the one-year statute of limitations; however, he denied the claim on the basis that Mr. Oliver had not demonstrated an existing earning capacity which was diminished when the work-related disability appeared. The issue of whether the 1965 or 1985 schedule of compensation should be applied was, therefore, not addressed by the Commissioner.

## I.

■ Plaintiff's injury occurred prior to the effective date of the 1985 amendment to the Workers' Compensation Act, which requires *de novo* review of the record in this Court, and is thus controlled by the material evidence standard of review. *See Alley v. Consolidation Coal Co.*, 699 S.W. 2d 147 (Tenn.1985). The review by this Court is, therefore, limited to a determination of whether there is any material evidence in the record to support the Commissioner's findings, not where the preponderance of the evidence lies. And, if there is any material evidence in the record to support the Commissioner's findings, we are bound to accept them. The Commissioner found: "[I]nasmuch as the Plaintiff filed his claim within one year from the date when the Plaintiff was first aware that he had a disability and was advised that the disability was related to the accident, the Plaintiff has filed within the one-year statute of limitations."

■ The State avers that Appellant's action is barred by the one-year statute of limitations set forth in T.C.A. § 50–6–203 and § 50–6–224. The State contends that workers' compensation benefits ought not to be awarded in a factual situation such as this one. Here, we have a situation where a permanent disability did not manifest itself until after the worker had terminated his employment with the State, obtained other employment for a period of some eight years, and retired from that employment for a completely unrelated cause. The State avers that it is difficult to see how the Appellant's permanent disability to the wrist can be said to arise out of and in the course of his employment when the same did not manifest itself until almost 20 years after the employer-employee relationship, which is the basis for liability, had been voluntarily terminated by the Appellant to seek other employment.

As noted by Justice Cooper in *Hibner v. St. Paul Mercury Ins. Co., et al,* 619 S.W. 2d 109, 110 (Tenn.1981):

"The determination of the time the statute of limitations begins to run [in a workers' compensation case], often is troublesome, not from the standpoint of what triggers the running of the statute, but from a factual standpoint. It is now settled that the date the employee's disability manifests itself to a person of reasonable diligence, not the date of the accident, triggers the statute of limitations."

Plaintiff testified that nothing led him to believe that he had any permanent damage as a result of the fracture in March, 1965. It is undisputed that the disability did not manifest itself until the Spring of 1985, some 20 years after the accident. Until that time, Mr. Oliver had no problems or limitations with his wrist and arm and had no reason to expect or foresee any limitations or problems with his wrist and arm. It was not until the Spring of 1985 that he began to have swelling and severe pain in his wrist. The statute of limitations was not triggered until Mr. Oliver was examined by Dr. Serrato and learned he had a permanent anatomical change and impairment of the left upper extremity which was equivalent to a 50% disability to the left wrist joint. There is ample material evidence in this record to support the finding of the Commissioner that this action is not time barred.

## II.

■ The Appellant avers that the Claims Commission erred in denying him workers' compensation benefits on the basis that he failed to demonstrate that he had an existing earning capacity which was diminished when his work-related disability appeared. The State appears to concede that the Commissioner so erred but contends that the Commissioner reached the correct result because of the statute of limitations issue discussed above. The Commissioner found that Mr. Oliver had no earning capacity and, therefore, had suffered no loss by the additional disability or suffered any loss of earning capacity. Accordingly, the Commissioner ruled Mr. Oliver was not entitled to recover under the Act. It should be pointed out that the Act provides a schedule of compensation for the total loss of or partial loss of use of specific members of the body. T.C.A. § 50–6–207(3) sets out the schedule of compensation for an individual entitled to permanent partial disability benefits, without any mention or requirement that the claimant prove a decrease in earning capacity. In *Aerosol Corporation of the South v. Johnson,* 222 Tenn. 339, 343, 435 S.W.2d 832, 834 (Tenn. 1968), this Court stated:

The compensation law of this State contains a schedule of injuries to members of the body; and this schedule governs as to what award, if any, shall be made to one sustaining either total or partial loss, or loss of use, of a member scheduled. Under this statutory system, such award is not measured by diminution of the employee's earning capacity; and equally so, the award for loss of use of a member is measured by the value fixed in this statute, or a percentage thereof in case of less than total permanent loss of use.... See also *Shores v. Shores* (1965), 217 Tenn. 96, 395 S.W.2d 388.

The parties entered into a stipulation that this was an accidental injury, arising out of and in the course of employment and also that proper notice was given to the employer. The stipulations were as follows:

"1. That on the 23rd of March, 1965, the Claimant, Wayne Oliver, was an employee of the Tennessee Game and Fish Commission and while performing his duties as a Game and Fish Officer he accidentally fell from a bridge resulting in a compound fracture to his left wrist and arm.

2. That as a result of said injury, the Claimant presently has a permanent anatomical impairment of 50% to his left upper extremity and wrist.

3. That at the time of the accident in March of 1965, the Claimant timely reported the accident to his immediate Supervisor, James D. Reems, who subsequently filed a claim with the State, which authorized payment of $204.00 to the treating physician in June of 1965.

4. That at the time of the accident the Claimant's average weekly wages with the Tennessee Game and Fish Commission were approximately $100.00 per week. That the maximum rate of compensation at the time of the accident was $36.00 and that the maximum rate of compensation in 1985 was $168.00 per week."

The undisputed evidence in this case is that Mr. Oliver suffers a 50% permanent anatomical impairment to the left upper extremity and wrist. This impairment resulted from a work-related accident but did not manifest itself until some 20 years after the injury. Under T.C.A. § 50–6–207(3) one suffering such a work-related disability is entitled to compensation for the partial loss of the use of the scheduled member of his body without regard to his loss of earning power or wages. If we were to follow the Commissioner's reasoning, no remedy would be available to those individuals who might be so unfortunate as to partially lose the use of or totally lose a part or member of their body from a work-related injury, while at the same time being so unfortunate as to suffer from some other un-

related physical or emotional affliction which has rendered them disabled prior to the initiation of a workers' compensation claim.

In *Bishop v. United States Steel Corp.,* 593 S.W.2d 920 (Tenn.1980), the employer insisted that since the claimant was totally disabled from phlebitis at the time he initiated his claim for compensation for disability from silicosis, his disability from silicosis was non-compensable. This Court stated: "We see no basis either in the Workers' Compensation Act or in logic to deprive a workman who suffers a compensable injury, of benefits, merely because of the existence of an independent, concurrent, non-compensable cause of disability." 593 S.W. 2d at 922.

We are of the opinion that Appellant should be compensated under T.C.A. § 50–6–207(3).

### III.

■ Having found that Appellant is entitled to benefits under the Workers' Compensation Act, we must now determine whether the 1965 or 1985 schedule of compensation should be applied in this case. It is settled and well accepted in this State that absent some indication of a contrary intent on the part of the Legislature, the statute that determines the rights of the parties under the Workers' Compensation Law is that in effect on the date of the accident or injury that provides the basis for employee's claim. See *Shope v. Allied Chemical Corp.,* 611 S.W.2d 818, 819 (Tenn.1981); *Liberty Mutual Ins. Co. v. Starnes,* 563 S.W.2d 178, 179 (Tenn.1978), *Cates v. T.I.M.E. D.C., Inc.,* 513 S.W.2d 508, 509 (Tenn.1974). The Appellant is, therefore, entitled to benefits based on the law in effect at the time of his injury in March of 1965.

The judgment of the Tennessee Claims Commission is reversed and the cause remanded for the purposes of awarding the Appellant benefits under T.C.A. § 50–6–207(3), said benefits to be established on the basis of the law in effect in March of 1965.

COOPER and O'BRIEN, JJ., concur.

HARBISON, C.J., and FONES, J., dissents.

HARBISON, Chief Justice, concurring in part and dissenting in part.

I concur with the majority opinion that disability for a scheduled injury is to be awarded in accordance with the provisions of the workers' compensation statutes and is based upon loss of or loss of use of a scheduled member, not upon any differential in earning capacity.

In my opinion, however, this claim is barred by the statute of limitations. The employee suffered a compound fracture of his wrist, and the fracture had to be rebroken and reset. Appellant was hospitalized on two occasions. Worker's compensation benefits in the form of medical expenses were paid by his employer.

The fact that the employee did not at that time realize that he would have some permanent disability to the injured member as a result of the fracture is not, in my opinion, controlling. The employee knew that he had an injury at work which disabled him for several weeks and for which his medical expenses were paid. His wrist was in a cast for six weeks. In my opinion, he was required to file a claim for worker's compensation within one year from the date of that injury or from the payment of his medical expenses; otherwise the claim would be barred. There is no claim of fraud, deception or concealment on the part of the employer.

In *Taylor v. Clayton Mobile Homes, Inc.*, 516 S.W.2d 72 (Tenn.1974) the claimant waited almost two years after her accident to file suit. Although she suffered pain as a result of the accident, she argued that she did not know of her injury until a much later date. This Court held that the claim was barred and that there is no requirement that a claimant have exact or precise information as to the nature of an injury before the statute starts to run, where the claimant knows that an injury occurred in the scope and course of employment and was thereafter disabling.

As stated, the claimant in this case wore an arm cast for about six weeks as a result of an obvious fracture. In my opinion, the claimant was not entitled to wait for twenty years and then make a claim. He either knew or was charged with knowledge that he had sustained a work-related accident resulting in substantial loss of time from work and requiring extensive medical care and weeks with his arm in a cast. In support of his claim with the Commission he described the setting and re-breaking of his wrist. He stated:

> The wrist did not cause me any trouble for some time after this. However, *as years passed, I began to have disfunction and pain in the wrist. The wrist is deformed and has been since the cast was first removed at the end of treatment. As time passed the disfunction increased as has the pain until I sought treatment for it* ... [in 1985]. (Emphasis added.)

The Court has occasionally upheld trial courts in extending the statute of limitations for one or two years, and often for a few months, for undiagnosed or latent disability, but two decades, in my opinion, is beyond reason. The case relied upon by the Commission, *Jones v. Home Indemnity Co.*, 679 S.W.2d 445 (Tenn.1984) involved a delay from July 30, 1979, until November, 1979—four months—before the statute was held to commence running.

I would affirm the judgment of the Claims Commission, although for reasons different from those stated by the Commission. I am authorized to state that Justice William H.D. Fones concurs in this Opinion Concurring in Part and Dissenting in Part.