Compensation Appeals Board
No. 95-887

### APPEAL OF ROBERT GELINAS
### (New Hampshire Compensation Appeals Board)

August 11, 1997

*Craig, Wenners, Craig & Casinghino, P.A.*, of Manchester (*Vincent A. Wenners, Jr.* and *Stephanie J. Stergiou* on the brief, and *Mr. Wenners* orally), for the claimant.

*Devine, Millimet & Branch, P.A.*, of Manchester (*Laurence W. Getman* and *John E. Friberg, Jr.* on the brief, and *Mr. Friberg* orally), for respondent City of Manchester.

JOHNSON, J. The claimant, Robert Gelinas, appeals from a decision of the New Hampshire Compensation Appeals Board (board) determining that his average weekly wage, for purposes of calculating his disability benefits, was zero. We affirm.

The claimant was employed by the City of Manchester (city) as a firefighter from 1958 until he retired, based on his years of service, on February 1, 1985. On January 18, 1989, the claimant suffered a heart attack while playing in a tennis tournament in Florida. On December 20, 1990, a department of labor hearing officer held that the claimant was entitled to temporary total disability benefits from January 19, 1989, into the future. Following unsuccessful appeals by the city to the superior court and this court on the issue of causation, *see City of Manchester v. Gelinas*, 139 N.H. 63, 649 A.2d 50 (1994), the case was remanded to the department of labor for a hearing on the issues of total disability and wage benefits.

The hearing officer denied disability compensation because he determined that the claimant's average weekly wage for compensation purposes was zero. *See* RSA 281-A:15, :28 (Supp. 1996). On *de novo* appeal, the board also held that the claimant's average weekly

wage was zero because it determined that the date of injury was January 19, 1989. The claimant now appeals to this court, arguing that the board erred as a matter of law in calculating his average weekly wage based on his earnings in the weeks preceding the date of disability (*i.e.*, the date of his heart attack) rather than the date of last exposure to the hazards of his employment (*i.e.*, the date of his retirement).

The amount of compensation payable for temporary total disability is set as a percentage of the employee's average weekly wage. *See* RSA 281-A:28. That figure is in turn calculated according to RSA 281-A:15, which provides, in pertinent part:

> [A]n average weekly wage shall be computed by using the method in subparagraph (a) or (b), or (c) that yields the result more favorable to the injured employee:
>
> (a) By dividing the gross earnings of the injured employee in the service of the same employer during the preceding 26 weeks by that number of weeks; or
>
> (b) By dividing the gross earnings of the injured employee in the service of the same employer during a period exceeding 26 weeks but not exceeding 52 weeks by the appropriate number of weeks.
>
> (c) If, however, by reason of the shortness of time during which the employee has been in the employment of the employer or because of the nature or term of the employment, it is inequitable to compute the average weekly wage using the method in subparagraph (a) or (b), regard may be had to the rate of pay designated in the injured employee's agreement of employment or to the gross earnings of persons in the same grade employed at the same work by the same employer or, if there are no persons so employed, by persons of the same grade employed in the same class of employment in the same locality.

RSA 281-A:15, I.

■ The claimant implies, by pointing out the absence of the words "date of injury" in the statute, that the board erred in using that date as the end of the period for computing average weekly earnings. The statute, like its predecessor, RSA 281:2, VII (1987) (repealed), "does not state *what* event the [twenty-six to fifty-two week period] precede[s]." *Ranger v. N.H. Youth Dev. Center*, 117 N.H. 648, 650, 377 A.2d 132, 133 (1977). We have long held, however, under the predecessor statutes to the Workers' Compensation Law,

that for purposes of calculating the average weekly wage for disability benefits, "the date of the injury must be taken as the point from which to calculate the average weekly wage." *Petition of Correia*, 128 N.H. 717, 719, 519 A.2d 263, 265 (1986). "The judicial interpretation of the old act became an integral part thereof and under the rules of statutory construction would continue to be controlling under the new act, in the absence of weighty evidence that the Legislature did not intend to adopt such prior judicial interpretation." *Bolduc v. Company*, 96 N.H. 235, 238, 73 A.2d 115, 118 (1950). Thus, we find that the board did not err in calculating the average weekly wage for disability purposes using a period ending with the date of injury.

■ The claimant further argues that the board erred in determining the date of the claimant's injury. RSA 281-A:16 provides:

> For the purpose of determining the date of injury for an occupational disease, the date of injury shall be taken to be the last date of injurious exposure to the hazards of such disease or the date on which the employee first knew or reasonably should have known of the condition and its relationship to the employee's employment, whichever is the later.

RSA 281-A:16 (Supp. 1996). The parties agree that the date of last hazardous exposure was, at the latest, February 1, 1985, the day the claimant retired. The claimant also testified before the superior court that he had not experienced or been aware of any heart disorders prior to his January 18, 1989, heart attack. Thus, under a plain reading of the statute, "the date on which the employee first knew or reasonably should have known" of his heart condition was January 18, 1989, and that, as the later of the two dates, is the date of injury. Since the claimant had been retired for approximately four years prior to that date, his weekly wage calculated under either subsection (a) or (b) of RSA 281-A:15 is zero.

The claimant asserts, however, that RSA 281-A:15 cannot be so applied in the case of a retired firefighter who is disabled because of heart or lung disease. He looks to RSA 281-A:17, I (Supp. 1996), which establishes a presumption in certain cases that heart or lung disease occurring within five years of a firefighter's retirement is occupationally related, and argues that in order for that section to have any meaning in conjunction with RSA 281-A:15, the retired firefighter's date of injury "must either be the date of last injurious exposure, the date of retirement, or be irrelevant to the calculations

of an average weekly wage." The claimant argues that the legislature would not have created a five-year statutory presumption of causation only to have the retired firefighter denied benefits because he had not earned a wage in the one year preceding the date of his heart attack.

We are not persuaded by this argument. Literal application of RSA 281-A:15 in the case of a retired firefighter does not render the presumption of RSA 281-A:17, I, meaningless because the presumption has potential application beyond determining eligibility for disability benefits. It may be used, for instance, to determine eligibility for medical, hospital, and remedial care benefits under RSA 281-A:23 (Supp. 1996), which are not calculated on the basis of an average weekly wage.

We also reject the claimant's suggestion that the board should have used RSA 281-A:15, I(c) to determine the claimant's average weekly wage by reference to the gross earnings of other firefighters in the same grade employed in the same class by the city. By its terms, RSA 281-A:15 applies if "by reason of the shortness of time during which the employee has been in the employment of the employer or because of the nature or term of the employment, it is inequitable to compute the average weekly wage using the method in subparagraph (a) or (b)." RSA 281-A:15, I(c). The alleged inequity here results not from anything inherent in the claimant's employment but from the fact of the claimant's voluntary retirement almost four years prior to his date of injury.

Moreover, we do not view the result reached here as inequitable. We have long held that "our compensation act is intended primarily to afford limited compensation . . . to the injured employee for his loss of earning capacity." *Desrosiers v. Company*, 98 N.H. 424, 426, 101 A.2d 775, 777 (1953) (quotation omitted). We have also, however, looked at other factors which could affect the injured worker's ability to earn, and have afforded workers' compensation benefits only for the loss of earning capacity attributable to work-related injury. *See, e.g., Appeal of Normand*, 137 N.H. 617, 620, 631 A.2d 535, 536 (1993) (lost earning capacity due to general business conditions not compensable). Where a claimant's lack of earning capacity is due not to his disability, but to his voluntary retirement from the work force, he has not suffered a loss that our Workers' Compensation Act was intended to remedy.

*Affirmed.*

All concurred.