IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
OCTOBER 3, 2000 Session

## DOROTHY G. MACKIE, ET AL. v. YOUNG SALES CORPORATION, ET AL.

**An Appeal By Permission from the
Supreme Court Special Workers' Compensation Appeals Panel
Circuit Court for Davidson County
No. 96C-2724      Thomas Brothers, Judge**

---

**No. M1998-00590-SC-WCM-CV - Filed March 1, 2001**

---

We granted review in this workers' compensation case to determine whether the trial court erred in awarding temporary total benefits and death benefits based on the maximum weekly wage where the employee did not earn any wages in the 52 weeks prior to being diagnosed with malignant mesothelioma. On appeal, the Special Workers' Compensation Appeals Panel concluded that the trial court erred in awarding benefits based on the maximum weekly wage because the employee was voluntarily retired at the time of his diagnosis, and that benefits were to be based on the minimum weekly wage. After reviewing the record and applicable authority, we conclude that an employee's voluntary retirement does not preclude workers' compensation benefits for an injury arising out of and in the course of employment and that the trial court properly awarded benefits based on the maximum weekly rate under the facts of this case.

**Tenn. Code Ann. § 50-6-225(e); Findings of Fact and Conclusions of Law by the Special Workers' Compensation Panel Rejected; Judgment of the Trial Court Affirmed**

E. RILEY ANDERSON, C.J., delivered the opinion of the Court, in which FRANK F. DROWOTA, III, JANICE M. HOLDER, and WILLIAM M. BARKER, JJ., joined. ADOLPHO A. BIRCH, JR., J., not participating.

H. Douglas Nichol and Gregory D. Onks, Knoxville, Tennessee, for the appellant, Dorothy G. Mackie

Bryan Essary, Nashville, Tennessee, for the appellee, Young Sales Corporation.

**OPINION**

The employee, James Mackie, installed asbestos insulation for much of his working life between 1948 and 1988. According to a stipulation between the parties, Mackie's last injurious exposure to asbestos occurred while he was working for the defendant, Young Sales Corporation, in 1973.[1]

Mackie stopped working sometime in 1989 or 1990 because he wanted to retire. Although he retained his union membership in Asbestos Workers Local 86 and could have returned to work, subject to availability, Mackie did not return to work at any time after his retirement. On January 23, 1993, Mackie was diagnosed with asbestos-related malignant mesothelioma, which the parties stipulated was caused by exposure to asbestos insulation. On May 15, 1993, Mackie died from the illness.

The plaintiff, Dorothy Mackie, filed this suit seeking workers' compensation benefits for the death of her husband. The trial court entered a judgment awarding total temporary disability benefits, for the period of January 23, 1993 to May 15, 1993, and death benefits.[2] The trial court calculated the maximum weekly rate of $318.24 based on evidence in the record that members of Asbestos Union Local 86 earned $17.22 per hour in 1993.

On appeal, the Special Workers' Compensation Appeals Panel concluded that the trial court erred in awarding temporary benefits and death benefits based on the maximum weekly wage because James Mackie was voluntarily retired at the time he was diagnosed with mesothelioma. The Panel therefore modified the judgment to reflect a minimum weekly compensation rate of $35 per week.[3] We granted the appellant's motion for review to consider these issues.


## ANALYSIS

We begin our analysis by observing that the workers' compensation statutes, Tenn. Code Ann. § 50-6-101, et seq. (1999), were enacted by the legislature to provide compensation to an

---

[1] The record indicates that in the late 1970's, Mackie and his wife, Dorothy G. Mackie, settled several claims against various manufacturers of asbestos following Mackie's diagnosis for asbestosis.

[2] The trial court awarded death benefits for a period of 400 weeks minus the sixteen weeks of temporary benefits, for a total of $122,296. The trial court further found, however, that the defendant was entitled to a credit of $59,675.01 to reflect settlements previously entered by James and Dorothy Mackie. The net total lump sum award, therefore, was $62,529.15. In addition, the trial court awarded $4,500 for burial expenses and $32,207.01 for medical expenses.

[3] Although not discussed in the Panel's opinion, its application of the minimum weekly compensation rate of $35 per week would result in a net loss to the plaintiff. See Tenn. Code Ann. § 50-6-102(15)(D) (1999). Under the Panel's decision, the benefits would include $35 per week for 400 weeks, or $14,000, plus funeral expenses of $4,500, plus medical expenses of $32,207.01, for a total of $50,707.01. When offset against a credit to the defendant of $59,675.01, the result is minus $8,968. Likewise, if no weekly benefits were afforded, the loss to the plaintiff would be even greater.

employee who sustains an injury that arises out of and in the course of his or her employment. See Mathis v. J.L. Forrest & Sons, 216 S.W.2d 967, 967 (Tenn. 1949). The purpose is to "provide injured workers with periodic payments as a substitute for lost wages in a manner consistent with the worker's regular wage." Perdue v. Green Branch Mining Co., 837 S.W.2d 56, 59 (Tenn. 1992) (citing Van Hooser v. Mueller Co., 741 S.W.2d 329, 330 (Tenn. 1987)). In cases where the work-related injury has resulted in the employee's death, workers' compensation benefits are to be paid to the surviving dependents of the employee. Jones v. General Accident Ins. Co. of America, 856 S.W.2d 133, 134 (Tenn. 1993); see also Tenn. Code Ann. § 50-6-210 (1999).

The workers' compensation scheme does not require fault or negligence of the employer but, rather, is a complete substitute for any tort remedies that the employee may otherwise have had against the employer. See Liberty Mut. Ins. Co. v. Stevenson, 368 S.W.2d 760, 762-63 (Tenn. 1963). Because the workers' compensation laws are remedial in nature, they must be construed liberally to accomplish their intended purpose. Betts v. Tom Wade Gin, 810 S.W.2d 140, 142 (Tenn. 1991). For example, this Court has said:

> [T]his Court must interpret those statutes in a manner designed to protect workers and their families from the economic devastation that, in many instances, can follow on-the-job injuries. Furthermore, Tennessee's workers' compensation laws must be construed so as to ensure that injured employees are justly and appropriately reimbursed for debilitating injuries suffered in the course of service to the employer.

Id. at 142-43.

In reviewing the statutory provisions that are relevant to the present case, we observe that where a trial court determines that an employee suffered temporary total disability, the schedule of compensation is "sixty-six and two-thirds percent (66 2/3%) of the average weekly wages . . ., subject to the maximum weekly benefit and minimum weekly benefit." Tenn. Code Ann. § 50-6-207(1)(A) (Supp. 2000). Similarly, "[i]n all cases of death of an employee covered by the Workers' Compensation Law, sixty-six and two-thirds percent (66 2/3%) of the average weekly wages, as defined, shall be paid in cases where such deceased employee leaves dependents, subject to the maximum weekly benefit." Tenn. Code Ann. § 50-6-209(b)(1) (1999).

In calculating the schedule of compensation, "average weekly wages" means "the earnings of the injured employee in the employment in which the injured employee was working at the time of the injury during the period of fifty-two (52) weeks immediately preceding the date of the injury divided by fifty-two (52) . . . ." Tenn. Code Ann. § 50-6-102(2)(A) (1999). The statute further provides:

> Where by reason of the shortness of time during which the
> employee has been in the employment of the employee's employer it

is impracticable to compute the average weekly wages as above defined, regard shall be had to the average weekly amount which during the first fifty-two (52) weeks prior to the injury or death was being earned by a person in the same grade, employed at the same work by the same employer, and if there is no such person so employed, by a person in the same grade employed in the same class of employment in the same district.

Tenn. Code Ann. § 50-6-102(2)(C) (1999).

In the present case, it is undisputed that the employee was voluntarily retired and did not work at all in the fifty-two weeks preceding his diagnosis of asbestos-related malignant mesothelioma. The plaintiff nonetheless asserts that the trial court properly calculated temporary total benefits and death benefits based on the wages that her husband would have received had he been working a forty-hour week at the time he was diagnosed with malignant mesothelioma. The defendant argues, and the Panel agreed, that the plaintiff was not entitled to compensation based on the maximum weekly rate because the employee was voluntarily retired and lost no earnings as a result of the work-related illness.

Although this precise issue is a question of first impression in Tennessee, we have considered similar issues in other cases. In Bishop v. United States Steel Corp., 593 S.W.2d 920 (Tenn. 1980), the trial court awarded permanent partial disability benefits to an employee who developed silicosis due to his workplace exposure to hazardous material. The employer argued on appeal that the disability for silicosis was not compensable because at the time the claim was filed the employee was totally disabled from an unrelated condition of phlebitis. Id. at 921. This Court rejected the employer's argument: "We see no basis either in the Workmen's Compensation Act [sic] or in logic to deprive a workman, who suffers a compensable injury, of benefit, merely because of the existence of an independent, concurrent, noncompensable cause of disability." Id. at 922.

Likewise, in Oliver v. State, 762 S.W.2d 562 (Tenn. 1988), an employee's injury to his wrist while employed with the state did not manifest itself as a permanent injury for some twenty years, by which time the employee had retired from employment with the federal government due to an unrelated back injury. Although the employee had not worked at all during the fifty-two weeks preceding the onset of the permanent wrist injury, this Court observed that Tenn. Code Ann. § 50-6-207(3) "sets out the schedule of compensation for an individual entitled to permanent partial disability benefits, without any mention or requirement that the claimant prove a decrease in earning capacity." Id. at 565 (emphasis added). In concluding that the injury was compensable, this Court wrote:

The undisputed evidence in this case is that [the employee] suffers a 50% permanent anatomical impairment to the left upper extremity and wrist. This impairment resulted from a work-related accident but did not manifest itself until some 20 years after the

-4-

> injury. Under T.C.A. § 50-6-207(3) one suffering such a work-related disability is entitled to compensation for the partial loss of the use of the scheduled member of his body <u>without regard to his loss of earning power or wages</u>.

<u>Id.</u> at 566 (emphasis added).

The defendant argues, however, and the appeals panel agreed, that <u>Bishop</u> and <u>Oliver</u> are distinguishable because they involve employees who were not working due to a disability and not due to voluntary retirement. The defendant relies upon the decision in <u>McKinney v. Feldspar Corp.</u>, 612 S.W.2d 157 (Tenn. 1981), in which this Court reversed the trial court's determination that a part-time employee was entitled to benefits based on a full, 40-hour week. This Court said that the "computation of the 'average weekly wage' of a part[-]time employee . . . must be based upon his actual part[-]time earnings rather than upon the basis of the standard hourly wage or the standard work week of 40 hours." <u>Id.</u> at 160 (citations omitted).[4]

In the present case, the relevant statutory provisions do not expressly address the issue of an employee who learns of a work-related injury or occupational disease following his or her voluntary retirement.[5] We note, however, that the employees in <u>Oliver</u> and <u>Bishop</u> were not working at the time of their work-related injuries, nor, apparently, had they worked within 52 weeks of their injuries. Despite the fact that they lost no actual earnings, this Court held that the injuries were compensable. As we said in <u>Oliver</u>, the schedule of compensation under Tenn. Code Ann. § 50-6-207 is to be determined "without regard to . . . loss of earning power or wages." <u>Oliver</u>, 762 S.W.2d at 566.[6]

In addition to these decisions, we reiterate that in the absence of express statutory guidelines, we must interpret the workers' compensation provisions in a manner that is consistent with the remedial purpose of compensating employees for injuries sustained in the workplace. In filing a workers' compensation claim, the burden is on the employee to establish (1) that an injury or disease arose out of and in the course of his employment, and (2) that the employee provided timely notice of the condition to his or her employer. A workers' compensation claim must also be filed within the one-year statute of limitations, which begins to run when through the exercise of reasonable care and diligence it becomes discoverable and apparent that the employee sustained a compensable

---

[4] The defendant also relies upon decisions in two jurisdictions that have held that employees who had retired were not entitled to workers' compensation benefits. <u>Appeal of Gelinas</u>, 698 A.2d 1248 (N.H. 1997); <u>Arlinton County Fire Dep't v. Stebbins</u>, 466 S.E.2d 124 (Va. 1996).

[5] We note that there are obvious practical barriers to creating a statutory distinction based on "voluntary retirement." An employee's retirement may occur at any age, for example, and may or may not be a permanent status.

[6] The decision in <u>McKinney</u> is distinguishable inasmuch as the employee was working part-time and had an actual wage at the time of his injury upon which benefits should have been calculated. <u>McKinney</u>, 612 S.W.2d at 160.

injury. See Tenn. Code Ann. § 50-6-203 (1999); Ogden v. Matrix Vision of Williamson County, Inc., 838 S.W.2d 528, 540 (Tenn. 1992). Obviously, in some cases the statute of limitations may not begin to run until after an employee's retirement. Accordingly, we conclude that an employer may not simply rely on the fortuitous timing of an employee's retirement to avoid the responsibility for providing compensation.

In applying these considerations in this case, there is no dispute that Mackie's malignant mesothelioma arose out of and in the course of his employment and that the illness would have been compensable but for the question of his retirement. There is also no dispute that the defendant obtained the benefit of Mackie's labor and that neither Mackie nor the plaintiff had any other recourse or remedy against the defendant. In our view, disallowing compensation in these circumstances would conflict with the tradeoff that is at the heart of the workers' compensation system – that the employee has a remedy for injuries arising out of and in the course of his or her employment and the employer has a limit on the amount of its liability and complete protection from tort liability.

Accordingly, we disagree with the Panel's conclusion that the employee's voluntary retirement automatically precluded compensation as awarded by the trial court.[7] The only remaining question for the trial judge, then, was determining the appropriate amount of benefits. The trial court's determination that benefits should be based upon the maximum weekly rate was predicated upon evidence in the record regarding the nature of Mackie's work, the retention of Mackie's union membership, and the proof regarding the availability and pay for such work at the time Mackie learned of his work-related malignant mesothelioma. Our review indicates that the evidence in the record does not preponderate against the trial court's finding.

## CONCLUSION

Accordingly, after reviewing the record and applicable authority, we conclude that an employee's voluntary retirement does not preclude workers' compensation benefits for an injury arising out of and in the course of employment and that the trial court properly awarded benefits based on the maximum weekly rate under the facts of this case. We therefore reject the findings and conclusions of the Special Workers' Compensation Appeals Panel and affirm the judgment of the trial court. Costs of the appeal are taxed against the appellee, Young Sales Corporation, for which execution may issue if necessary.

 

_____
RILEY ANDERSON, CHIEF JUSTICE

---

[7] Indeed, the Panel's conclusion that voluntary retirement precluded compensation was internally inconsistent with its decision to modify the judgment so as to allow compensation based on the minimum weekly rate.