FILED

May 26, 2017

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time 2:40 PM



## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT MURFREESBORO

| | | |
|---|---|---|
| JOYCE JACKSON, | ) | Docket No. 2016-05-1257 |
|     Employee, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| UNIVERSITY OF THE SOUTH, | ) | State File No. 90499-2015 |
|     Employer, | ) | |
| And | ) | |
| | ) | |
| TRAVELERS PROPERTY CAS. CO. | ) | Judge Dale Tipps |
| OF AMERICA, | ) | |
|     Insurance Carrier. | ) | |

## EXPEDITED HEARING ORDER GRANTING MEDICAL AND TEMPORARY DISABLITY BENEFITS

This matter came before the undersigned workers' compensation judge on May 18, 2017, on the Request for Expedited Hearing filed by Joyce Jackson. The present focus of this case is whether Ms. Jackson is entitled to medical and temporary disability benefits for her alleged neck, head, and right-shoulder injuries. The central legal issues are whether Ms. Jackson is likely to establish at a hearing on the merits that she suffered an injury arising primarily out of and in the course and scope of her employment. For the reasons set forth below, the Court holds Ms. Jackson is likely to meet this burden and is entitled to medical and temporary disability benefits.

### History of Claim

Ms. Jackson testified that she was employed as a custodian at University of the South (University) on October 30, 2015, when she fell down seven concrete steps while walking from one campus building to another. She was unsure exactly what caused her to fall, but she fell from the top step. Ms. Jackson ended up at the bottom of the stairs, striking her head on the railing post. She did not know whether she lost consciousness

1

but had pain in her head and ear after the accident. Ms. Jackson also had a large bump on the side of her head where she hit the post.

Carter Barnes, Ms. Jackson's brother, testified he was working with her on the date of the accident. He saw her fall down the steps and tried to catch her. Mr. Barnes was unsuccessful and, in fact, fell on top of her. He thought Ms. Jackson needed help, so he asked someone to call for an ambulance.

Ms. Jackson was transported to Emerald-Hodgson Hospital, which records show she received chest and neck x-rays, as well as a CT scan of her head. The emergency department doctor discharged Ms. Jackson with instructions to follow up with her primary care physician.

Because Ms. Jackson continued to have head and neck pain, University subsequently provided a panel of physicians, from which she selected Dr. Matt Petrilla. His records show that he first saw Ms. Jackson on November 10, 2015, for complaints of pain in her upper back and neck. Dr. Petrilla assessed upper thoracic/trapezius spasm and performed a trigger point injection. Over the next few months, he also prescribed medication and physical therapy. The last time Dr. Petrilla saw Ms. Jackson on May 5, 2016, he noted complaints of constant neck pain.

Ms. Jackson testified her neck pain continued after she last saw Dr. Petrilla, but she did not return to him because he told her the problem was arthritis. She also began suffering numbness in her left arm and hand. This led her to believe she was having a stroke, so she went to her primary care physician, Dr. David Martin, on October 18. Dr. Martin diagnosed paresthesia of the arm and performed an EKG, which he felt was abnormal. He also made a cardiology referral. On October 28, Dr. Martin ordered a cervical CT scan and an EMG and nerve conduction study for Ms. Jackson's hands and arms. Following those tests, he assessed cervical radiculopathy and ordered an MRI.

Based on Dr. Martin's findings, Ms. Jackson returned to Dr. Petrilla on December 5. He noted her continued arm numbness and weakness as well as leg weakness and difficulty walking. Dr. Petrilla assessed cervical radiculopathy and noted, "Needs [surgery] ASAP will arrange [with] workman's comp on urgent basis." He referred Ms. Jackson to neurosurgeon, Dr. Michael Moran.

Dr. Moran's December 12 record shows that he saw Ms. Jackson for complaints of numbness and weakness in her arms and legs. She reported her problems began when she fell down some steps at work over a year earlier. After examining Ms. Jackson, he noted global weakness in her arms and legs, and "profound weakness" in her hands. Her cervical films showed "almost complete collapse to the C5-6 level" and "evidence of a soft disc herniation centrally, C4-5 compressing the cord." Dr. Moran assessed progressive cervical myelopathy and recommended surgery on an expedited basis.

Regarding causation, he wrote:

> I think her symptoms are stemming from the disc herniation at C4-5.
> Several months ago she had a significant injury where she fell and hit her
> head. She states she really wasn't having any problems before that. Since
> that time she has developed a progressive myelopathy. My opinion would
> be that the fall caused the soft central disc herniation at C4-5 and therefore
> this is a work related condition.

Dr. Moran performed an anterior discectomy, interbody arthrodesis, and anterior internal fixation from C4 to C6 on December 21. In response to a letter from Ms. Jackson's attorney, Dr. Moran restated his opinion on February 8, 2017, that:

> [T]rauma from the fall, where she hit her head, caused an injury to the C4-5
> disc with a herniation that in all likelihood progressed with time until she
> developed a rapidly progressive neuropathy. I therefore believe the need
> for her urgent surgery was a result of her work injury. . . . She is currently
> under a five pound lifting restriction. . . . She was profoundly disabled prior
> to surgery and it is difficult to determine what the end point will be in terms
> of her working capabilities. She certainly has not been able to work in any
> capacity dating back to our first encounter which was December 12, 2016.

Ms. Jackson seeks medical benefits, including designating Dr. Moran as an authorized treating physician, and temporary disability benefits for the period of December 12, 2016, through the present.

University denies that Ms. Jackson is entitled to any workers' compensation benefits. It contends she is not likely to prove her injuries arose primarily out of and in the course and scope of her work, arguing that her fall was idiopathic. Even if the claim were determined to be compensable, University contends that Ms. Jackson is not entitled to temporary disability benefits because she voluntarily retired before her disability manifested itself.[1]

## Findings of Fact and Conclusions of Law

The following legal principles govern this case. Because this case is in a posture of an Expedited Hearing, Ms. Jackson need not prove every element of her claim by a preponderance of the evidence in order to obtain relief. Instead, she must come forward with sufficient evidence from which this Court might determine she is likely to prevail at a hearing on the merits. *See* Tenn. Code Ann. § 50-6-239(d)(1); *McCord v. Advantage*

---

[1] Ms. Jackson had already accepted a buyout offer from University at the time of her accident and had retired effective December 31, 2015.

*Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015).

*Compensability*

To prove a compensable injury, Ms. Jackson must show that her alleged injury arose primarily out of and in the course and scope of her employment. To do so, she must show her injury was primarily caused by an incident, or specific set of incidents, identifiable by time and place of occurrence. Further, she must show, "to a reasonable degree of medical certainty that it contributed more than fifty percent (50%) in causing the . . . disablement or need for medical treatment, considering all causes." "Shown to a reasonable degree of medical certainty" means that, in the opinion of the treating physician, it is more likely than not considering all causes as opposed to speculation or possibility. *See* Tenn. Code Ann. § 50-6-102(14) (2016).

Applying these principles to the facts of this case, the Court first notes that University presented no testimony or other proof to contradict Ms. Jackson's claim that she suffered a fall at work on October 30, 2015. Thus, there is no dispute that Ms. Jackson established a specific incident, identifiable by time and place. The question to be resolved, therefore, is whether she appears likely to prove at a hearing on the merits that her work was the primary cause of that incident. Applying the foregoing principles to the facts of this case, the Court finds that Ms. Jackson is likely to meet this burden.

The only medical proof submitted regarding causation was Dr. Moran's opinion that Ms. Jackson's fall caused the disc injury that made surgery necessary. Absent any evidence to the contrary, Ms. Jackson appears likely to prevail at a hearing on the merits that her workplace accident was the primary cause of her injury.

University contended that Ms. Jackson's injuries did not arise out of her employment because this was an idiopathic or unexplained fall. This argument is not persuasive for a number of reasons.

First, University suggested there might be other, personal causes for Ms. Jackson's fall. Specifically, it questioned her about her blood sugar at the time of the accident and the possible effects on her vision or balance. University, however, submitted no evidence that any unrelated medical condition caused Ms. Jackson to fall. Instead, it challenged Ms. Jackson's credibility by pointing out discrepancies in her recorded statement and her testimony about details such as whether she grabbed the hand railing or missed it and what she told the investigator about her vision on the morning of her accident. The Court does not find these discrepancies to be material in the absence of any proof that Ms. Jackson's diabetes caused her fall. Mere speculation by University as to possible medical causes of the accident is insufficient to support a finding that an idiopathic condition caused the fall.

Second, and more importantly, the relevant inquiry is not what caused the alleged idiopathic condition or event but what caused *the injury*. *See McCaffery v. Cardinal Logistics*, 2015 TN Wrk. Comp. App. Bd. LEXIS 50, at \*4-5 (Dec. 10, 2015). In *McCaffery*, the employer argued that a sneeze of unknown origin caused the motor vehicle accident, which resulted in the employee's injuries. Thus, in the employer's view, the accident was idiopathic and not compensable. *Id.* at \*8. The Board rejected that argument, explaining that "[t]he focus is on the causal link between the employment and the accident or injury, rather than a causal link between the employment and the idiopathic episode." *Id.* at \*11. "[A]n accidental injury arises out of employment when there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury." *Phillips v. A&H Constr. Co.*, 134 S.W.3d 145, 151 (Tenn. 2004). Thus, as in *McCaffery*, the cause of the fall is not determinative. Instead, there is a clear causal connection, apparent to the rational mind, between the accident and the injuries Ms. Jackson sustained in the fall.

University argued this case is an exception to *McCaffery* because an injury with an unexplained cause does not arise out of the work unless there is "some condition of employment that presents a peculiar or additional hazard." *Veler v. Wackenhut Servs., Inc.*, 2011 LEXIS 78, at \*9 (Tenn. Workers' Comp. Panel Jan. 28, 2011). It likened Ms. Jackson's injuries to those caused by an idiopathic fall on level ground, which is not compensable in Tennessee. *See Sudduth v. Williams*, 517 S.W.2d 520 (Tenn. 1974).

This argument, however, overlooks the undisputed testimony that Ms. Jackson fell down the steps and hit her head on the railing post. University suggests that the stairs themselves do not constitute a hazard, relying on *Portilla v. Tyson Foods, Inc.*, 2015 TN Wrk. Comp. LEXIS 41 (May 26, 2015). *Portilla*, as a Court of Workers' Compensation Claims Expedited Hearing Order, was an interlocutory decision of a trial court with very limited precedential value. Further, it is distinguishable, in that Ms. Portilla did not fall down or injure herself on the stairs but fell after she reached a landing.[2] The Court is unconvinced that injuries caused by a fall down a staircase are the equivalent of an unexplained fall on level ground. However, even setting aside the question of the stairs themselves, Ms. Jackson struck her head on a the stair-railing post; and the post is a clear hazard peculiar to the area she had to traverse as part of her job duties. The Court, therefore, finds Ms. Jackson presented sufficient evidence at the expedited hearing to establish that she is likely to prove a compensable injury at a hearing on the merits.

---

[2] *Cartee v. Schwan's Food Service, Inc.*, 2015 TN Wrk. Comp. LEXIS 102 (Dec. 1, 2015), additionally relied upon by University, is also a Court of Workers' Compensation Claims Expedited Hearing Order with no precedential value and is likewise distinguishable on the facts. Ms. Cartee suffered no injuries as a result of falling on stairs and, in fact, did not fall down at all. Rather, she sought benefits for an injury to her knee that she claimed "went out" while she was walking down the steps. The issue in *Cartee*, therefore, was not whether injuries caused by falling down a staircase are compensable. Instead, it was whether stairs constitute a peculiar or additional hazard to an employee whose knee goes out while walking down stairs.

5

*Medical Benefits*

Having found Ms. Jackson is likely to prevail at a hearing on the merits, the Court must address her request for medical benefits. Under the Workers' Compensation Law, "the employer or the employer's agent shall furnish, free of charge to the employee, such medical and surgical treatment . . . made reasonably necessary by accident[.]" Tenn. Code Ann. § 50-6-204(a)(1)(A) (2016). Further, section 50-6-204(a)(3)(A)(ii) provides:

> When necessary, the treating physician selected in accordance with this subdivision (a)(3)(A) shall make referrals to a specialist physician, surgeon, or chiropractor and immediately notify the employer. The employer shall be deemed to have accepted the referral, unless the employer, within three (3) business days, provides the employee a panel of three (3) or more independent reputable physicians, surgeons, chiropractors or specialty practice groups.

The original panel physician, Dr. Petrilla, referred Ms. Jackson to Dr. Moran for surgery, and there is no evidence that University provided a panel of surgeons. Therefore, University is deemed to have accepted the referral, and the Court designates Dr. Moran as Ms. Jackson's authorized treating physician for future treatment.

Ms. Jackson's pre-hearing brief requests reimbursement of her out-of-pocket medical expenses. However, she submitted no medical bills or payment records into evidence. Thus, although Ms. Jackson is undoubtedly entitled to reimbursement for out-of-pocket medical expenses arising out of reasonable and necessary treatment with Dr. Moran, the Court cannot order payment of the bills at this time. Regarding Ms. Jackson's request that she be "held harmless as to payments made by her health insurance for the treatment provided [by] Dr. Moran," the Court has no authority to issue such an order. If the parties fail to resolve the issue of payment for Dr. Moran's treatment, the Court can order payment of any properly proven medical bills in a future hearing.

*Temporary Disability Benefits*

Ms. Jackson also seeks payment of temporary disability benefits. An injured worker is eligible for temporary total disability (TTD) benefits if: (1) the worker became disabled from working due to a compensable injury; (2) there is a causal connection between the injury and the inability to work; and (3) the worker established the duration of the period of disability. *Jones v. Crencor Leasing and Sales*, TN Wrk. Comp. App. Bd. LEXIS 48, at *7 (Dec. 11, 2015) (citing *Simpson v. Satterfield*, 564 S.W.2d 953, 955 (Tenn. 1978)). The first record of a medical professional taking Ms. Jackson off work came from Dr. Moran. His February 8, 2017 note stated, "She certainly has not been able to work in any capacity dating back to our first encounter which was December 12, 2016." Based on this statement, Ms. Jackson appears likely to prove she is entitled to

TTD benefits for the period of December 12, 2016, through February 8, 2017.[3]

Dr. Moran indicated on February 8 that Ms. Jackson was "under a five pound lifting restriction." It is unclear whether this meant he intended to continue Ms. Jackson's period of total work restrictions or to allow her to return to work light duty within the lifting restriction. Because Dr. Moran's intent is unclear and there is no other medical order taking Ms. Jackson off work, the Court cannot say she is likely to prevail in establishing entitlement to additional TTD benefits at this time. However, the possibility that she might have been able to return to limited duty requires the Court to address whether Ms. Jackson is entitled to temporary partial disability benefits (TPD) beginning with the date Dr. Moran assigned the lifting restrictions.

TPD is a category of vocational disability available when the temporary disability is not total. *Id.; see also* Tenn. Code Ann. § 50-6-207(1)-(2) (2016). Specifically, "[t]emporary partial disability refers to the time, if any, during which the injured employee is able to resume some gainful employment but has not reached maximum recovery." *Id., citing Williams v. Saturn Corp.*, 2005 Tenn. LEXIS 1032, at *6 (Tenn. Workers' Comp. Panel Nov. 15, 2005). Thus, in circumstances where the treating physician has released the injured worker to return to work with restrictions prior to maximum medical improvement, and the employer either (1) cannot return the employee to work within the restrictions or (2) cannot provide restricted work for a sufficient number of hours and/or at a rate of pay equal to or greater than the employee's average weekly wage on the date of injury, the injured worker may be eligible for temporary partial disability. *Id.*

Because she retired at the end of 2015, the parties presented no proof as to whether University could have returned Ms. Jackson to work within her restrictions. The question, therefore, is whether Ms. Jackson's retirement precludes any claim for TPD benefits.

There does not appear to be case authority addressing this issue for injuries under the current statutory scheme – those occurring after July 1, 2014. Prior case law makes it clear that "[v]oluntary retirement does not defeat an injured workers' right to compensation benefits." *Luna v. Gaf Fiberglass Corp.*, 2002 Tenn. LEXIS 221 (Tenn. Workers' Comp. Panel May 9, 2002), *citing Mackie v. Young Sales Corp.*, 51 S.W.3d 554, 559 (Tenn. 2001). However these cases do not address the specific question of whether TPD benefits are foreclosed by unrelated, voluntary retirement.

In the absence of any authority on this issue, the Court concludes that Ms. Jackson has not demonstrated that she is likely to prevail on her TPD claim at a hearing on the

---

[3] Although the parties indicated there is a dispute over the correct compensation rate, the DCN identified no such dispute. In fact, it specifically indicated the parties had agreed to a rate of $242.11 per week.

merits. It is possible that University would have been able to provide some level of restricted work, had Ms. Jackson still been an employee. Her retirement, which was unrelated to her injuries, deprived University of the opportunity to do so. The Workers' Compensation Law "shall not be remedially or liberally construed but shall be construed fairly, impartially, and in accordance with basic principles of statutory construction and this chapter shall not be construed in a manner favoring either the employee or the employer." Tenn. Code Ann. § 50-6-116 (2016). Under this standard, it would be inequitable to require an employer to pay TPD benefits to an injured employee solely because she voluntarily retired from her job over a year earlier.

**IT IS, THEREFORE, ORDERED** as follows:

1. University shall provide Ms. Jackson with medical treatment made reasonably necessary by her October 30, 2015 injury in accordance with Tennessee Code Annotated section 50-6-204. The Court designates Dr. Moran as the authorized treating physician.

2. University shall pay Ms. Jackson temporary total disability benefits in the amount of $2,040.64 for the period from December 12, 2016, through February 8, 2017.

3. This matter is set for a Scheduling Hearing on July 6, 2017, at 9:00 a.m. You must call 615-741-2112 or toll free at 855-874-0473 to participate. Failure to call in may result in a determination of the issues without your further participation. All conferences are set using Central Time (CT).

4. **Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2016). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.**

5. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov or by calling (615) 253-1471 or (615) 532-1309.

**ENTERED this the 26ᵗʰ day of May, 2017.**

**Judge Dale Tipps**
**Court of Workers' Compensation Claims**

**APPENDIX**

Exhibits:
1. Affidavit of Joyce Jackson (as redacted during the hearing)
2. Agreed medical records
3. Printout of wage records
4. Photographs of accident scene
5. Custodian job description

Technical record:
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing
4. Employer/Carrier's Expedited Hearing Brief
5. Employee's Pre-Expedited Hearing Statement

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order Granting Benefits was sent to the following recipients by the following methods of service on this the 26th day of May, 2017.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|---|---|---|---|---|
| R. Steven Waldron | | | X | arlenesmith@comcast.net |
| Vanessa R. Hall | | | X | vrhall@travelers.com |

_____
**Penny Shrum, Clerk of Court**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**

11